126 So.2d 389 (1960)
Charles R. PREWITT et ux., Plaintiffs-Appellees,
v.
ST. PAUL FIRE & MARINE INSURANCE CORPORATION et al., Defendants-Appellants.
No. 9351.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1960.
Rehearing Denied February 2, 1961.
*390 Mayer & Smith, Shreveport, for appellants.
Bodenheimer, Looney & Richie, Shreveport, for appellees.
BOLIN, Judge.
Charles R. Prewitt and his wife, Lela May Prewitt, brought a suit in the district court of Caddo Parish against the defendants for personal injuries, medical expenses, property damages and loss of wages resulting from an automobile accident. The accident occurred as Mrs. Prewitt was driving the community automobile south from Vivian, Louisiana, on Highway No. 1. As she was in the process of making a left turn from this highway into a private drive, she was struck from the rear by an overtaking vehicle which was operated by Mrs. Earl G. Williamson. This automobile was owned by the defendant, Earl G. Williamson, who carried a liability insurance policy issued by St. Paul Fire & Marine Insurance Corporation.
After a trial in the district court, Charles R. Prewitt was awarded a judgment in the sum of $1,901.41 for property damage, medical expenses and loss of wages, and Mrs. Prewitt was awarded the sum of $2,500 for personal injuries. The defendants took a suspensive and devolutive appeal from the judgment and the plaintiffs have answered the appeal and asked that the award be increased.
While there is naturally some conflict in the evidence, the circumstances surrounding the accident can be generally stated. At the time of the accident, Mrs. Prewitt *391 was on a mission soliciting sales for cosmetic products. She was about four miles south of Vivian on Highway No. 1, and had intended turning left into a private drive in order to park her car and call on a prospective customer nearby. As she approached the private drive, she contends that she looked in her rearview mirror and noticed a large van type truck following her; that she gave the proper hand signal for a left turn; that, after being satisfied the truck driver had seen her signal and was going to heed same, she slowly began her turn into the drive. After she had thus begun her left turn, she noticed the automobile being driven by Mrs. Williamson as it suddenly darted from behind the truck and came toward her at a very high rate of speed. Mrs. Prewitt then testified that her automobile was struck a glancing blow and Mrs. Williamson's vehicle passed to the left of her and went into the ditch on the left side of the road.
The plaintiffs contend that the accident was caused solely by the negligence of Mrs. Williamson in attempting to pass both Mrs. Prewitt and the truck without having seen the arm signal being given by Mrs. Prewitt, and, also, by operating her motor vehicle at an excessive rate of speed. There are also various other acts of negligence charged against Mrs. Williamson, but the principal acts are those stated. The defendants introduced evidence in an effort to show that the accident was caused by the negligence of Mrs. Prewitt in making a left turn from the highway to a private drive without having first ascertained that such a maneuver could be executed in safety. Having filed a special plea of contributory negligence, they also urged that even if Mrs. Williamson was negligent in overtaking and attempting to pass the two vehicles, Mrs. Prewitt's negligence should bar her recovery.
The trial judge assigned brief written reasons for his judgment and in connection with his findings he stated:
"We think defendant's driver was guilty of negligence in causing this accident, due to excessive speed. We do not think plaintiff's driver was guilty of contributory negligence, for the reason that a person may make a left-hand turn off of the highway when it appears that he can do so; and plaintiff would have safely completed this maneuver had not defendant's driver been exceeding the speed limit.
"`A motorist is not required to wait until there is no traffic in sight to make a left hand turn on a city street, but may do so after he has made a close, careful survey of traffic conditions and believes that such action is warranted and in doing so may rely upon the presumption that motorists in sight are observing and will continue to observe speed limitations and when a collision occurs because of excessive speed of such motorist the `proximate cause' of the accident is such excessive speed.' Kelly v. Neff et al., La.App., 14 So.2d 657."
A review of the evidence convinces us that the district judge was correct, both as to the facts and the law in this case. Counsel for the defendants, in his brief, has cited many well established and sound principles of law relative to the degree of care required of a motorist executing a left turn from a highway into a private drive. While we do not deem it necessary to digest and differentiate all of the authorities cited by him, we do think it appropriate to comment upon several of them. The defendants contend that the case of Auckley v. Robbins, La.App. 2 Cir., 1950, 45 So.2d 380, should preclude the plaintiffs from recovery. It is true that the cited case holds that the mere giving of a signal by a motorist intending to make a left turn is not in itself sufficient. The case also holds that a person making a left turn must make sufficient observation to his rear for any overtaking vehicle. However, Judge Hardy, as organ of the Court, specifically found that if the driver had made reasonable and proper observation before beginning his turning movement, he could and should have seen the approach *392 of the overtaking automobile, which at that time was in close proximity. (Emphasis ours.) Appellants next cite the case of Day v. Roberts, La.App. 2 Cir., 1951, 55 So.2d 316. In this case, Judge Gladney, as organ of the Court, found that the motorist making a left turn was negligent in not seeing what he should have seen; by making a left turn without giving the proper signal and having failed to ascertain that he could execute the maneuver safely. The Day case also involved two vehicles which were approaching each other from opposite directions.
The case of Nichols v. Everist, La.App. 2 Cir., 1955, 80 So.2d 199, is also a case involving an accident caused by a motorist making a left turn. The motorist in that case executed his turn with full realization that an automobile was following him because he had observed this vehicle on several occasions. The court, therefore, held that when the driver attempted a left turn across the highway, knowing that he was being thus followed from the rear, such a left turn amounted to gross negligence.
Appellants also cited the Court to the following cases involving left turns: Callia v. Rambin, La.App. 2 Cir., 1955, 78 So.2d 44; Choppin v. Conly, La.App. 2 Cir., 1958, 106 So.2d 846; Palmer v. Allstate Insurance Company, La.App. 2 Cir., 1957, 99 So.2d 529; Lawrence v. Great American Indemnity Co., of New York, La.App. 2 Cir., 1958, 107 So.2d 338. Without analyzing each of the cases cited above, we can simply say that they reaffirm the well-established principles of law that a motorist executing a left turn must exercise a great deal of care which includes giving the necessary signal indicating such turn, and making prudent and reasonable observation to his rear; that upon making such observation, he is bound to see that which he should have seen, and if he sees an overtaking vehicle he must not execute his left turn unless it can be done in safety.
Applying the cited cases to the one now under consideration, we are satisfied from the evidence that Mrs. Prewitt did everything that the law required of her before executing her left turn. The testimony of the truck driver was to the effect that he saw her give the proper hand signal for a left turn; that he also observed her looking in her rearview mirror to ascertain if he was going to honor her signal, and that after so doing, she slowly began her turn. The truck driver corroborated Mrs. Prewitt's version of how the accident happened in every important detail. Both he and Mrs. Prewitt testified that Mrs. Williamson suddenly darted from behind the truck and attempted to pass both the truck and the automobile at an excessive rate of speed. There is little doubt in our minds that Mrs. Williamson was operating her Cadillac automobile at a terrific rate of speed. Two people who live near the scene of the accident, and who witnessed same, corroborated the truck driver and Mrs. Prewitt as to her speed. The physical evidence also shows that the skid marks left by her vehicle were approximately 96 feet and that after skidding that distance she hit the Prewitt automobile broadside, knocked it a distance of 36 feet, then continued on for 132 feet more before striking and breaking in half a telephone pole which was six inches in diameter. This, to our minds, should be positive proof that Mrs. Williamson was driving at a tremendous rate of speed.
We are, therefore, of the opinion that the sole and proximate cause of this accident was the excessive rate of speed of Mrs. Williamson.
Under these circumstances, Mrs. Prewitt was only required to give the necessary hand signal and make a careful observation to her rear before attempting the left turn. Before executing a left turn a motorist is not required to wait until there is no traffic in sight, but he may do so after he has made a close, careful survey of traffic conditions and believes that such a turn can safely be made; and in so doing, he may rely upon the presumption that motorists in *393 sight are observing and will continue to observe speed limitations and when a collision occurs because of the excessive speed of the overtaking motorist, the proximate cause of the accident is the excessive speed. Kelly v. Neff, supra.
Having decided that the judgment of the lower court is correct as to liability, we now pass to the question of quantum. In this connection we quote from the written opinion of the trial judge:
"Mrs. Prewitt received a mild cerebral concussion with bruises of the chin, chest, left wrist, both knees, and anterior to the left ear. She was hospitalized fifteen days, since which time she has been anxious, nervous, and upset.
"Dr. Garrett, who is plaintiff's physician, testified that he could find no cause for plaintiff's consistent complaints. He referred her to a psychiatrist.
"Upon examination on April 13, 1960, Dr. Thomas L. Young diagnosed plaintiff's condition as follows: (1) Cervical arthritis, early, with pain over the distribution of the lower cervical roots; (2) Conversion reaction.
"Counsel claims a great amount of damage for plaintiff's `conversion reaction,' and cites the case of Humphries v. Delta Fire & Casualty Company [La.App.], 116 So.2d 130, wherein the court allowed $12,000 for conversion reaction. In the cited case, the plaintiff had a very severe conversion reaction.
"In the case at bar plaintiff testified, and appeared to be normal except she stated that she suffered pain continuously; that she needed to go to the doctor now; that things seemed like a dream. It appears that plaintiff is doing her regular household work, except ironing, but has not returned to her former occupation of selling cosmetics to customers in the country.
"We think that plaintiffs are entitled to the following items of damage:

Property damage $478.00
North Caddo Medical Center 463.41
Dr. Faludi 85.00
Dr. Thomas Young 148.50
Highland Clinic 117.50

"We think plaintiff is entitled to receive $600 for loss of wages, past, present, and future.
"We are of the opinion that Mrs. Prewitt is entitled to $1500.00 for bodily injury.
"With reference to her conversion reaction, we are of the opinion that this is very mild and, comparing plaintiff's testimony in the case at bar with the testimony in the cited case, we are of the opinion that plaintiff should recover not more than $1,000 for conversion reaction."
As to the award in favor of Mr. Prewitt, there seems only one item in serious dispute and that pertains to the sum of $600 which was awarded for the loss of wages. Counsel for the plaintiffs, in his answer, strenuously contends that this award should be increased. However, after examining the record, we can find no error in this portion of the judgment. The testimony of both Mr. and Mrs. Prewitt was to the effect that she sold cosmetics on a part-time basis and they estimated that she made an average gross monthly income of $75.00, but that because she was required to furnish her own transportation she probably netted about $50 per month. The trial judge apparently felt that the medical testimony showed a disability of approximately one year as a result of the accident. While there is some conflict in the evidence as to the duration of Mrs. Prewitt's disability, we are inclined to believe that the trial judge was as accurate on this item as was possible.
As stated above, Mrs. Prewitt was awarded the sum of $1,500 for bodily injuries and an additional sum of $1,000 for a condition *394 described by the medical experts as "conversion reaction". In answer to the appeal, plaintiffs seriously contend that the award for personal injuries was inadequate and should be increased.
The medical testimony shows that Mrs. Prewitt was involved in a rather serious accident which resulted in her being hospitalized for a period of 15 days. The consensus of all the doctors who testified in this case was generally that she received a mild to moderate cerebral concussion and also a mild to moderate "whiplash" injury to her neck and back.
The serious contentions insofar as the quantum is concerned seem to be over the award of the sum of $1,000 for "conversion reaction". Counsel for the plaintiffs cites us to the case of Humphries v. Delta Fire and Casualty Company, La.App. 1 Cir., 1959, 116 So.2d 130, in which an award of $12,000 was made for traumatic neurosis. We have examined that case and find that the physical condition of the plaintiff in the instant case can not be said to be comparable to the plaintiff therein.
We do not feel that it is necessary for us to burden this record with a more detailed discussion of either the medical testimony or the physical condition of the injured party herein. As has been said so many times before by our courts, there is no hard and fast rule to be followed in arriving at a proper award to be made in a personal injury suit. Our appreciation of the evidence leads us to believe that Mrs. Prewitt suffered a mild whiplash injury, followed by a period of anxiety classified by the neurosurgeon as conversion reaction. However, this conversion reaction was of a very mild nature. The trial judge was in a better position under these circumstances to fix the award than is this court and he has awarded Mrs. Prewitt the sum of $2,500 for her injuries, and we can find no manifest error in his findings.
The judgment of the lower court is, therefore, affirmed at appellants' costs.
Affirmed.