203 So.2d 739 (1967)
John H. PROCELL et ux., Plaintiffs-Appellees,
v.
James A. STRANGE et al., Defendants-Appellants.
No. 2087.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1967.
Rehearing Denied November 27, 1967.
Writ Refused January 18, 1968.
Morgan, Baker, Skeels & Coleman, by Donald Baker, Shreveport, E. L. Edwards, Jr., Many, for defendants-appellants.
Love, Rigby & Donovan, by Kenneth Rigby, Shreveport, for plaintiffs-appellees.
Before FRUGE, SAVOY and LEAR, JJ.
FRUGE, Judge.
This case involves an accident which resulted when the plaintiff attempted a leftturn *740 maneuver into a private drive at the same moment that defendant was endeavoring to pass her. The trial court exonerated plaintiff from any negligence and concluded that the sole proximate cause of the accident was the negligence of the defendant in attempting to pass plaintiff at a high rate of speed in the small town of Zwolle. Mrs. Procell was awarded the sum of $1,750.00 for the injuries she had suffered, and her husband was awarded the sum of $1,861.95 as special damages for the loss of her services. From this unfavorable judgment the defendants have effected this appeal. There is no issue on appeal as to the quantum of damages, for the defendants have conceded that the sums allowed by the trial court were reasonable. The ultimate issue for our consideration is whether or not the plaintiff here was negligent in attempting to turn at such a time and is thereby barred from recovering.
The basic facts established by the evidence seem to be that plaintiff was proceeding in the Town of Zwolle with her young son in the back seat and Mrs. Lucille Simpson as a guest passenger in the front seat riding with her. She had turned left in a generally southerly direction and stopped for a light at the next intersection in the downtown section of the town. Shortly thereafter, she put on her signal indicator to turn left. At this time, and all during the time she was driving from the light, her speed was five to ten miles per hour. She proceeded at this slow rate some 200 feet after putting her left signal indicator on and through a T-intersection to the left. At about half a block beyond the T-intersection she began a left turn, and right after she crossed over the center of the street, the left side of her car struck the right side of defendant's car as he was endeavoring to pass her.
Plaintiff testified that she and her passenger, Mrs. Lucille Simpson, were to stop at a service station on the left past the T-intersection to get a coke. Plaintiff testified that she looked in her rear view mirror when she was approximately three car lengths or so from the drive of the service station and she saw no traffic to her rear whatsoever. She also testified that she looked again in her rearview mirror when she was about one car length before making her left turn and she again saw nothing behind her. Just after the left front of her car crossed the center line beginning her left turn, she saw defendant's automobile on her left side striking her at that same instant.
The defendant testified that he was traveling from Shreveport to Many, and came through the small town of Zwolle that afternoon. He approached the light at which plaintiff was stopped but it turned green just as he slowed to a near stop, and thereafter he followed the plaintiff and, as he testified, "a tan colored car." The three cars proceeded at a very slow rate of speed in a generally southerly direction with the plaintiff leading and the tan colored car second, followed lastly by defendant's car. After clearing the T-intersection marking the next block, defendant saw that the way was clear ahead, so he sounded his horn and accelerated rapidly to pass both cars, but upon reaching the plaintiff's car he noticed her beginning a left turn into his path. He therefore turned his car left, with the left wheels thereof off the pavement, and applied his brakes, but he could not avoid plaintiff's car. Defendant testified that at the instant of the impact his motor stalled, and, being equipped with power brakes and power steering, he therefore had little control over his car. As a result, he coasted down the shoulder of the highway for some 200 feet before bringing his car to a stop. Thereafter, he backed it up to a point some seventy or eighty feet from the spot of collision. Defendant stated that he never saw the left turn signal of the plaintiff, although he did not specifically deny that she had given such signal.
Mrs. Lucille Simpson, who was riding with plaintiff, testified that plaintiff had given her left turn signal 200 feet or so before the point of the accident. She said that she and the plaintiff were discussing *741 whether or not to stop for a coke and that although she did not want to stop, she finally consented to do so. Mrs. Simpson did not notice if the plaintiff had looked in her rearview mirror to see any overtaking vehicle. She estimated defendant's speed at thirty-five miles per hour at the instant of the accident, which was the first moment that she saw his automobile.
Plaintiff's witness, Johnny Ray Gathright, testified that he was standing near the service station into which plaintiff intended to turn and that he saw her signal light on at the moment defendant began to pass her. He stated that defendant started around the plaintiff at a speed somewhere between thirty-five and forty miles an hour just as plaintiff began her left turn, but the witness did not see the collision.
There is a good deal of conflict in the testimony and findings concerning the maximum speed limit in the Town of Zwolle at this date and as to the defendant's speed.
Defendant urges this court to hold as error the trial court's finding that he was traveling at least fifty miles an hour (all testimony as to defendant's speed estimated it at somewhere between thirty and forty miles per hour). The defendant maintains that the accident occurred at a point just across from a sign showing a thirty-five mile speed zone, and therefore he was not speeding. Defendant's testimony as to the speed limit was verified by that of Mrs. Simpson.
The investigating officer, who was the town marshal, testified that the city ordinance calls for a maximum speed of twenty-five miles per hour; but, he added, the State Highway Department, under its powers to regulate speed on state highways, had sometime about then placed decreasing and increasing speed zones on that highway, and after such postings there was a twenty mile per hour zone up until a point somewhat farther south of where the accident occurred. It would appear then, from his testimony, that the speed limit at that particular point was either twenty or twenty-five miles an hour, whereas the defendant and Mrs. Simpson believed the speed limit to be thirty-five miles an hour by virtue of a sign posted right at the point of the accident. The exact speed limit and speed at which defendant was traveling at the moment of impact is a fact which we need not pass upon because we find the defendant was traveling at least forty miles an hour, which is in excess of the speed limit regardless of which testimony we accept, and that he was negligent in so doing within the city limits of Zwolle. We are also in accord with the trial court's finding that he was negligent for his failure to see and heed the left turn signal of the plaintiff, and further, that his negligence was a substantial factor in causing the accident.
We now arrive at the much more difficult question concerning the plaintiff's contributory negligence. Defendant strongly urges that plaintiff must have been negligent because, by her own testimony, she utterly failed to observe him following her and his passing operation. Defendant testified that he blew his horn before passing, which the plaintiff should have heard. Furthermore, even if she could not have heard that, had she looked to her side and rear immediately before turning she would have noticed defendant's presence and thereby herself avoided the accident.
The law pertinent to this type of case is well settled. As to the duty of the one intending to turn left, the Louisiana Revised Statutes provide:
32:104:
"A. No person shall * * * turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
"B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter *742 and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."
32:105:
"Any stop, turn or moving signal shall be given either by means of the hand and arm as provided in R.S. 32:106 or by a mechanical or electric signal device * * *."
32:73:
"2. * * * the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."
As to the duty imposed upon the automobile overtaking and passing another going in the same direction, Title 32 of the Revised Statutes provides:
§ 75. "No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. * * *"
Opportunities for the application and interpretation of these provisions are evidenced by a mass of jurisprudence considering the type case we have here.
Typical of the interpretation of these statutes made by the courts is the language in the case of Prewitt v. St. Paul Fire & Marine Ins. Corp., 126 So.2d 389, 392 (La. App.2d Cir. 1960), where the court said:
"* * * Without analyzing each of the cases cited above, we can simply say that they re-affirm the well-established principles of law that a motorist executing a left turn must exercise a great deal of care which includes giving the necessary signal indicating such turn, and making prudent and reasonable observation to his rear; that upon making such observation, he is bound to see that which he should have seen, and if he sees an overtaking vehicle he must not execute his left turn unless it can be done in safety."
See also, Breland v. American Insurance Co., 163 So.2d 583 (La.App.2d Cir.1964), and Newman v. Southern Farm Bureau Cas. Ins. Co., 110 So.2d 816 (La.App. 1st Cir.1959).
We find no manifest error in the trial court's conclusion that the plaintiff was free from negligence. Although the character of a left turn renders such maneuver highly dangerous, this does not mean that every time an accident occurs as a result of such a turn the one attempting the turn is negligent as a matter of law. There have been a number of cases indicating circumstances in which one turning left may be found free from negligence. Illustrative of these circumstances is where one turning in accordance with legal requirements was unable to see the overtaking car before collision was unavoidable. Judy v. Capps, 185 So.2d 84 (La.App. 4th Cir. 1966); Prewitt v. St. Paul Fire & Marine Ins. Corp., supra; Hinton v. Beyl, 122 So.2d 680 (La.App. 1st Cir.1960); Paggett v. Travelers Indem. Co., 99 So.2d 173 (La.App.2d Cir.1957); Delaune v. Crawford, 39 So.2d 94 (La.App. 1st Cir. 1949).
Other instances are where the left-turning motorist observed an overtaking car and reasonably believed there was ample time to complete the turn in safety, but, due to the grossly excessive speed of the overtaking car, a collision resulted. Breland v. American Ins. Co., supra; Hudgens v. Mayeaux, 143 So.2d 606 (La.App.3d Cir. 1962); Faulkner v. Ryder Tank Lines, 135 So.2d 494 (La.App.2d Cir.1961); Newman v. Southern Farm Bureau Cas. Ins. Co., supra; Kelly v. Neff, 14 So.2d 657 (La. App.2d Cir. 1943). This latter situation appears applicable to this case.
*743 One proceeding down a highway may presume that following traffic will abide by the standard traffic regulations and that such traffic will heed the forward motorist's signals and allow him to perform his legal operations in safety. Nor is one, without notice to the contrary, held to anticipate the negligence of another. Breland v. American Ins. Co., supra; Faulkner v. Ryder Tank Lines, supra.
The testimony of the plaintiff was that she looked in the rearview mirror twice and saw no one behind her. As a result she believed, and she had every legal right to believe, that she could complete her turn in safety. It was not negligence for her not to see defendant, for the trial court found he was traveling at around fifty miles per hour and could have possibly traversed an entire block between the time plaintiff last looked in her rearview mirror and the instant she collided with defendant. Plaintiff cannot be held to have anticipated defendant's car would overtake her so suddenly. Even if the defendant were not traveling at fifty miles per hour as the trial court found, nonetheless, because of the slow rate of speed at which plaintiff was traveling and the speed at which we find defendant was travelingthat is, at least forty miles an hourwe still find that defendant overtook the plaintiff at such a speed as not to make it unreasonable for the plaintiff to have failed to see him. We are of the opinion that it was the gross negligence of the defendant in traveling at so high a rate of speed in the city limits of a small town and in failing to observe plaintiff's left turn signal which was the sole proximate cause of the accident.
For these reasons we hereby affirm the opinion of the trial court, costs of this appeal to be assessed against the appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.