SAVOY, Judge.
This is a suit for personal injuries and damages arising out of an automobile accident that occurred June 19, 1964, on Louisiana Highway No. 1 near Echo, in Rapides Parish. Prior to the accident three vehicles were proceeding northerly along the highway. The lead vehicle was a 1963 Chevrolet truck or tractor of the type used to haul a trailer owned by defendant, Paul Wall. This truck was being driven by defendant, Elton J. Ponthier, in the course and scope of his employment with Paul Wall, and it was insured by defendant, Great American Insurance Company. The second vehicle was a pick-up truck being driven by Lloyd Nash, who is not a party to this suit. The last vehicle was a 1961 Ford automobile owned by plaintiff, Rueben C. Olson, and being driven by plaintiff, David B. Ostrow. The accident occurred when defendant Ponthier began a left turn to enter a private driveway at a cotton gin, and the truck collided with the car being driven by Ostrow, who was in the process of passing the two forward vehicles.
After trial on the merits, the district court found that the sole and proximate cause of the accident was the negligence of plaintiff Ostrow, and judgment was entered in favor of defendants rejecting the claims of both plaintiffs and dismissing their suit at their costs. Subsequently, defendants filed a rule to fix certain costs. After a hearing the rule to fix costs was denied. From the judgment on the merits, *261 plaintiffs have filed an appeal to this court. Defendants have filed an answer to the appeal relating to the rule for costs which was dismissed.
On the merits, the issues raised in this case are those of negligence, contributory negligence, last clear chance and quantum.
The record shows the accident occurred at approximately 7:00 A.M. on June 19, 1964, on Louisiana Highway No. 1 in front of a cotton gin south of Echo, in Rapides Parish. The highway in the area involved is straight and level, and is paved with concrete some 18 feet wide, with shoulders five feet wide on each side. There were no signs or markings on the highway forbidding passing for northbound traffic. A ditch runs along the west side of the highway, and three private roads cross the ditch to the cotton gin from the west side of the highway. At the time of the accident, the weather was clear and the highway was dry. The speed limit in the area was 60 miles per hour.
Just prior to the accident all three vehicles were traveling in a northerly direction along the highway. Ponthier was alone driving his employer’s 1963 Chevrolet truck tractor, proceeding to pick up a trailer at the cotton gin. Following this truck was the pick-up truck being driven by Nash. Plaintiff Ostrow was alone in the Ford automobile and proceeded to pass the two preceding trucks as Ponthier made a left turn to enter one of the roads leading to the cotton gin. The two vehicles collided in the left or southbound lane of traffic at a point about three feet over the center line with plaintiff’s car striking headon into the truck at its left rear dual wheels. The truck was at an angle across the southbound lane of the highway at the point of impact with its front wheels near or just off the west edge of the paved highway. The impact was severe, plaintiff’s car was heavily damaged. Both vehicles were moved before the state trooper arrived.
After making his investigation and talking with the drivers, the trooper who investigated the accident placed the point of impact about three feet over the center line in the southbound lane of the highway, about 20 or 30 feet south of the “T” intersection formed by the highway and the driveway going to the cotton gin. He found no skid marks on the highway and estimated the truck was traveling about 25 miles per hour before making the left turn and that plaintiff was traveling about 60 miles per hour. He concluded that the car struck the truck at its left rear dual wheels, where he found imprints of paint. He estimated the damage to the car at $950.00. His report showed a defect in the truck’s left rear signal lights, but he did not recall whether there was no such system or whether the existing lighting system was defective. Nor did he recall whether he checked to see if this system was damaged by the collision.
Plaintiff Ostrow testified he was on his way to work at England Air Force Base from Marksville when he saw two trucks ahead which were' going about 40 or 45 miles per hour. He stated the pick-up was only a half a car length ’ behind the defendants’ truck. He testified he was driving about 50 miles per hour, and as he approached the two trucks from the rear, he saw no signals or lights and the way seemed clear, so he proceeded to pass, increasing his speed to 55 or 60 miles per hour. He testified he was about one and one-half car lengths behind the pick-up when he turned into the left lane to pass, and that as he pulled abreast of the pick-up, the driver of the lead truck stuck out his arm for a left turn and simultaneously made a sharp left turn. It did not appear to him that the truck decreased its speed at all in making the left turn. He thought his car first struck the left front side of the truck and then veered off striking the left rear tire, and that the truck was turning into the first of the three driveways to the cotton gin. He also testified that the front of his car was demolished, *262 and that the axle or drive shaft of the truck was broken. He did not see any brake or other signal lights on either truck as he was passing.
Defendant Ponthier testified he was going to pick up a trailer at the cotton gin and intended to turn into the second of the three driveways. He estimated that the first two driveways were about 20 or 25 feet apart. He testified that as he approached the area, he was driving about 40 miles per hour. He turned on his left turn blinker lights about 150 feet from his turn and began slowing down. He then looked in his rear view mirror, saw the pick-up truck, and then gave a hand signal for a left turn. The pick-up seemed to lag back, and he began his left turn at a normal angle about 20 feet before the second driveway at a speed of about five miles per hour. He stated he looked into the rear view mirror for the last time just before he made the turn, but he did not see the car until the moment of impact. His truck was at an angle on the highway at impact. He testified he gave the hand signal when he was about 75 or 100 feet from the driveway. He estimated the pickup was 35 or 40 feet behind him when he began his turn. He testified he checked the truck’s blinker system early on the morning of the accident, and that it was working. He also testified that Ostrow admitted after the accident that he was driving “too fast”.
A disinterested witness, Lloyd Nash, was driving the intervening pick-up truck. He testified he came up behind the large truck tractor at or before a curve in the highway about a quarter of a mile from the place of the accident. He testified that the two trucks proceeded along at about 40 miles per hour, and that when the lead truck was about 100 feet from the driveway, the driver gave a left turn hand signal. At that moment Nash estimated he was 3 or 4 car lengths behind the truck. He testified he slowed to about 15 or 20 miles per hour to allow the truck to make its turn, and that he was about 30 or 40 feet from the truck when it began its left turn. He testified the lead truck came to almost a stop before its turn, and when he saw the car pass him, he realized an accident was imminent and pulled his car to the right side of the road. He did not recall seeing a left turn signal on the truck, only its braking lights as it slowed. He testified the brake lights on his pick-up were working and would have also indicated he was slowing down. He stated that the truck turned fairly sharply from a point about 10 feet from the driveway, and that its front wheels were off the highway at impact. He thought the car had left some skid marks on the highway.
The district court found that Ponthier had given a proper left turn signal, had looked to the rear immediately prior to commencing his left turn, and had observed the following vehicle giving way to permit him to make a left turn. That court observed that if the driver of the following pick-up had sufficient notice to slow down to allow Ponthier to make the left turn, then certainly plaintiff Ostrow had sufficient notice to slow down; but that, obviously, Ostrow did not see the left turn signal, or if he did, he was attempting to get around Ponthier before he made his left turn.
In reaching its findings of facts, the dis-tict court generally accepted the testimony of defendant Ponthier, and the driver of the pick-up, Nash, and rejected the testimony of plaintiff Ostrow. This Court should not reverse the findings of facts made by the trial court unless they are manifestly erroneous. It is noted that the record is not clear as to the testimony in certain places, and the testimony as transcribed seems to conflict in places. The district court was in a better position than this Court to understand and interpret the meaning of the words used by the witnesses and to decide from their demeanor what portion of the testimony should be accepted and what portion should be rejected.
*263 After reviewing the record and giving careful consideration to the arguments raised in appellants’ brief, this Court finds no manifest error in the holdings of the district court that Ponthier was not negligent; that the sole and proximate cause of the accident was the negligence of Ostrow, and that the doctrine of last clear chance is not applicable to the facts of this case. Although the character of a left turn renders such maneuver highly dangerous, this does not mean that every time an accident occurs as a result of such a turn the one turning left is negligent as a matter of law. There have been a number of cases where the left turning driver was turning in accordance with legal requirements and, because of the circumstances of the particular case, was unable to see the overtaking vehicle in time to avoid an accident, and was held free from negligence. See Procell v. Strange, 203 So.2d 739 (La.App. 3 Cir. 1967), writ denied at 251 La. 688, 205 So.2d 606, and cases cited therein.
The record sows that Ponthier turned on his left turn blinker lights about 150 feet from the place where he was to turn, observed the following pick-up truck in the rear view mirror, and then gave a hand signal at 75 or 100 feet from the point where he began his turn. As he proceeded, he reduced the speed of his truck from about 40 miles per hour to a slow speed of about 10 miles per hour. He observed that the following pick-up truck was giving way to allow him to make his turn, and, not seeing any overtaking vehicles across the center line of the highway to the rear, or any approaching traffic from the front, he began an angling turn to the driveway of the cotton gin. Although he looked to the rear just before he began his turn, he did not see defendants’ car, as it was still behind the pick-up truck in the northbound lane.
The record also shows that Ostrow either failed to notice the forward trucks slowing and the left turn signal being given by the lead truck, or elected to try to get around the trucks before the lead truck made its left turn. By his own testimony, in making the passing maneuver, he increased his speed to almost 60 miles per hour and pulled from behind the slow moving trucks when he was only about one and one-half car lengths away. By so doing, he likely committed himself to passing the trucks before he was in a position to adequately observe the left turn signal of the lead truck. He should have started his passing maneuver with more caution and control of his vehicle and at an adequate distance to observe whether the lead truck was signaling a turn, especially in view of the slow speeds of the trucks and the fast rate he was overtaking them.
As this Court views the facts, it appears that Ostrow turned his car to the left across the center line to pass the trucks at about the same instant that Ponthier began his left turn, and accordingly, Pon-thier did not have an opportunity to observe the overtaking car in order to avoid the accident. We do not find that Ostrow pre-empted the left or passing lane so as to give him the right-of-way over Pon-thier. Reconstructing the distances between the vehicles at the time each moved into the left lane, we find that Ostrow’s car was only about 100 feet behind the lead truck. He was about one and one-half car lengths behind the pick-up truck, which in turn was about 40 feet from the lead truck. His car was moving about 30 to 40 miles per hour faster than the forward movement of the lead truck, indicating that the distance between these vehicles was then closing at a rate of about 45 or 60 feet per second. After beginning his passing maneuver, there was neither the time nor the distance for Ostrow to stop before the collision, and Ponthier was already committed and moving across the highway, blocking the passing lane.
Since Ponthier was not at fault, neither of the plaintiffs is entitled to an award, *264 and there is no need to go into the issue of quantum.
The final issue raised in the answer to the appeal concerns costs. After judgment was rendered in favor of defendants and against plaintiffs “dismissing their suit at their costs”, defendants filed a rule to show cause why certain items amounting to $664.65 should not be fixed as court costs to be paid by plaintiffs. After a hearing, the rule was dismissed. The record on appeal does not contain the note of evidence or offerings as made at the hearing of the rule, and the district court dismissed the rule for taxing costs without assigning written or oral reasons. It appears from the record that defendants did incur certain expenses in the taking of depositions introduced at the trial which should be charged to costs. Also, defendants followed the proper procedure to have these costs fixed. Under the circumstances, this Court will remand the case to the district court for the fixing of costs in accordance with LSA-R.S. 13:4533.
For the reasons assigned, the judgment of the district court on the merits is affirmed, and the judgment on the rule to fix costs is reversed. The case is remanded to the district court for the limited purpose of fixing costs. All costs of appeal are assessed against plaintiffs.
Affirmed in part, reversed in part, and remanded.
On Application for Rehearing.