MILLER, Judge
(dissenting).
In my opinion, defendants failed to prove that McCarthy was in the passing lane before Stewart commenced his left turn. I therefore respectfully dissent from the finding that Stewart was contributorily negligent.
*218 The writer does not find evidence to sustain the trial court’s finding that McCarthy “had to be in the passing lane at the time that Stewart commenced to make his left turn.” (Emphasis added.) We must consider the speed of the two vehicles (not mentioned in the majority opinion) ; the distance between the two vehicles when Stewart commenced his turn, and Stewart’s position when McCarthy first observed Stewart’s left turning vehicle.
McCarthy’s testimony is the ONLY evidence in the record concerning McCarthy’s position and speed at the time Stewart commenced his turn. An analysis of HIS testimony in the light of the physical facts is therefore essential.
First let us consider the physical facts. This accident occurred on Tipperary Street just off Louisiana Highway 1 between the west Alexandria traffic circle and the service road to England Air Force Base. Tipperary Street is one of several streets located at one block intervals, all of which take traffic in a southerly direction from and make a “T” intersection with La. 1. The area to the south of La. 1 along which both vehicles had been proceeding, is residential. The posted speed limit is SO miles per hour and there are no yellow lines on the highway to prohibit passing.
The impact occurred nine feet south of the south edge of the highway when the front of McCarthy’s Plymouth struck the Stewart pickup truck broadside, knocking it broadside off Tipperary Street and causing it to roll a distance estimated at between 100 and 285 feet. Both doors of the pickup truck were sprung and it was a total loss. McCarthy’s Plymouth sustained damages which made it undrivable and cost about $500 to repair. Before impact, McCarthy laid down 69 feet of skid marks on an excellent stopping surface and 36 feet of skid marks on a relatively poor stopping surface. These skid marks started in the passing lane 105 feet from the point of impact.
These physical facts reveal something to the writer. They indicate excessive speed by McCarthy. His testimony on speed and distances was vague. It might even be described as evasive. He guessed that he had followed a line of vehicles for a mile or so and that he and the vehicles ahead were traveling about 25 to 35 miles per hour. (Tr. 374) On two instances he found the oncoming lane clear enough for one or more of the lead vehicles to pass, but none of them attempted to pass. Since they did not, as soon as the lane cleared the third time, he began his passing maneuver. He estimated that there were three or four cars ahead (later changed to three to five) and he definitely DID NOT SEE the pickup truck at the head of the line. He had his car in passing gear in the passing maneuver. Since McCarthy was so vague about his speed and the distances involved, the writer cannot find that McCarthy’s testimony would require a holding that he was not exceeding the speed limit during his passing maneuver.
As to the distance between the two vehicles when McCarthy started his passing maneuver, the trial court found McCarthy negligent for attempting to pass “this tremendous number of cars in such a heavily traveled area.” While we are agreed that McCarthy was negligent, this statement indicates a finding that McCarthy was in the passing lane for some extended period prior to the time Stewart commenced his left turn. My Brothers of the majority might have concluded that there was a normal or proper interval between these leading vehicles. But there is not one bit of evidence to suggest such an interval. On the contrary, the ONLY evidence on this point is that of Stewart and his passengers. They placed the second vehicle as having slowed to Stewart’s speed of six to eight miles per hour, at a distance of only four feet behind Stewart, and the other vehicles having also slowed and closed their interval. If there was a substantial distance between each car in the line of slow moving vehicles, *219 McCarthy had the burden of establishing this fact. He did not.
And while the trial court found McCarthy negligent in passing “this tremendous number of cars” at one point in the opinion, in another he .finds, as we do, that it is not clear how many cars were ahead of McCarthy. McCarthy indicated that there were either three, four or five cars ahead of him. Defendants did not carry the burden of establishing that McCarthy was in the passing lane before Stewart began his turn. The writer doesn’t find that he proved that he was in the passing lane for any substantial period before he removed his foot from the accelerator (passing gear) and applied full braking power.
What was Stewart’s position when McCarthy first saw the left turning pickup truck? McCarthy himself says not once, but twice, not on cross-examination, but on direct examination, that when he FIRST saw the pickup truck, it looked to him “like it was almost perpendicular”.
Key testimony, which had not been transcribed when the trial judge decided the case, is quoted with emphasis added.
“Q. Where were you when you first observed Mr. Grady Stewart while driving a Chevrolet truck was in the act of making a left turn on Tipperary Street?
“A. That is hard to say, sir, I feel that I had passed one vehicle at this time. I was in the eastbound lane at the time and had passed at least one car and then I saw his fender, I saw what appeared to be a vehicle turning into the passing lane where I was passing, I can’t place exactly where I was.
“Q. How many cars were there between you and him at that time?
“A. I don’t know.” (Tr. 213 & 214).
At Tr. 369 and 370, McCarthy testified on direct:
“Q. When was the first time you had any indication that a vehicle was going to make a left turn?
“A. I can’t state that exactly, I was in the passing lane and I had — I know I had passed at least one car, was in the process of passing— whether or not — where I was in relationship to the next car, I don’t know.
“Q. But you had passed at least one car?
“A. As I recall I had. Yes.
“Q. Now which vehicle was it the ones ahead of you that started to make a left turn?
“A. It was the pickup truck.
“Q. How far ahead of you was that truck at the time you first noticed it?
“A. I don’t know exactly, I can’t say.
“Q. Could it have been more than one car length or a car length?
“A. Yes, it was more than one car length, yes.
“Q. What kind of turn was the truck making ?
“A. I don’t know exactly how to describe that, I would say that when I first observed the truck it appeared to be — first thing I saw was the left fender and I saw this coming into the car, perpendicular to Highway 1 and then I can’t vividly describe the kind of turn it was making, seems like it zms almost perpendicular but then that isn’t so also because at the time of —as I recall the time of impact it appeared that the collision took place on a kind of angle, this is as I recall it.
“Q. At the time when you pulled out to pass, had you seen that truck at *220 all, was it visible from where you were?
“A. No, sir.
“Q. Was it the only time when you saw that truck when it began to make its turn, or was it visible from any other point? From where you were in back of that line.
“A. I don’t recall seeing it at any other time. I vividly recall seeing it when it made the turn.
“Q. Did you ever see an arm signal?
“A. No, sir.
“Q. You ever see a light signal?
“A. No, sir.
“Q. Do you recall how fast you were going at the time you first saw the truck ?
“A. No.
“Q. Were you in or not in your passing gear at the time you first saw it?
“A. I was.”
In the writer’s opinion, while McCarthy’s testimony puts him in the passing lane when he first saw the turning pickup truck, his testimony does NOT carry the burden of proving that he was in the passing lane when Stewart started his left turn. We are agreed that this burden rests with defendant.
McCarthy did not suggest that he slowed his vehicle below the estimated 25 to 35 miles per hour before commencing his passing maneuver. Stewart and his passengers testified that Stewart slowed before making his turn. While we are bound by the trial judge’s appraisal that these witnesses exaggerated and testified favorable to their own position, reason demands that we find that Stewart slowed before making his left turn. There appears to be no reason to doubt Stewart’s testimony that he slowed to six or eight miles per hour before making his turn and that the following vehicles (except for McCarthy’s) slowed and closed their interval behind him. Furthermore, the writer finds no reason to doubt that Stewart and the vehicle behind Stewart both had their left signal light blinking. McCarthy cannot deny this because he was not even aware of the existence of the pickup truck until it appeared to be' perpendicular to him.
McCarthy vaguely places his speed at 25 to 35 miles per hour before going into passing gear to pass a line of three to five cars. He knows nothing about their interval and is apparently unaware of the fact that they have closed their interval and have slowed or are slowing to six to eight miles per hour. While there is no testimony discussing the manner in which McCarthy placed his car in “passing gear”, this means to the writer that he applied full throttle or almost full throttle to get into passing gear. There can be no question but that McCarthy was accelerating as rapidly as possible to pass the line of cars. The skid marks and gross damage to the vehicles substantiates high speed by McCarthy. By his own testimony he had allowed the lead vehicles two opportunities to pass. He didn’t even know what the vehicles immediately ahead of him were following. He had made up his mind that he was going to pass at the third opportunity. His first view of the pickup truck was when it appeared to him to be perpendicular.
These facts lead the writer to conclude that McCarthy was more concerned with the possibility that one or more of the intervening cars would start a passing maneuver, rather than the possibility that the, till then unseen, lead vehicle would make a left turn. This could account for his failing to observe the left turning vehicle until it was well into its left turn. These facts also indicate to the writer that McCarthy started his passing maneuver by accelerating while he was still in his proper lane of travel at a time when the lead vehicles had slowed or were slowing and closing their intervals. This maneuver gave him a “sling-shot” effect and put him *221 in the passing lane after Stewart began his left turn.
The writer does not believe that a left turning motorist followed by a line of vehicles which have obviously observed and are heeding his left turn signal, is required to anticipate that some tailend motorist will attempt a high speed passing maneuver to pass the entire line. If this is the standard of care, the burden on the left turning motorist grows as more cars join the line. Who can tell when the last car will attempt to pass twenty or thirty cars? Do the lead cars lose their right to enter the passing lane when the last motorist in a line of cars recklessly, but first, enters the passing lane ?
The writer would follow the cases of Olson v. Ponthier, 225 So.2d 259 (La.App. 3rd Cir., 1969), and Procell v. Strange, 203 So.2d 739 (La.App. 3rd Cir., 1967), writ denied.
In Olson, we considered the authorities relied on by defendant-appellee, but stated that:
“Although the character of a left turn renders such maneuver highly dangerous, this does not mean that every time an accident occurs as a result of such a turn the one turning left is negligent as a matter of law.”
And again we stated:
“There have been a number of cases where the left turning driver was turning in accordance with legal requirements and, because of the circumstances of the particular case, was unable to see the overtaking vehicle in time to avoid an accident, and was held free from negligence.”
In the Olson case, there was more justification for the action of the passing motorist than here, for the speed limit in Olson was 60 miles per hour as compared with 50 miles per hour here. Furthermore, the left turning motorist there turned into a private road at a cotton gin, whereas the accident here occurred in a residential area where streets were properly marked and located one block from each other. Additionally, the impact occurred in Olson only three feet from the center line. Here the impact occurred nine feet off the highway when the front of the speeding overtaking vehicle squarely struck the center of the left side of the slow moving left turning vehicle.
Paraphrasing our holding in Olson, as the writer views the facts, it appears that McCarthy turned his car to the leit across the center line to pass the line of vehicles at about the same instant that (or after) Stewart began his left turn. Accordingly, Stewart did not have an opportunity to observe the overtaking car in order to avoid the accident. It does not appear that McCarthy pre-empted the left or passing lane so as to give him the right of way over Stewart.
In Procell, the left turning motorist was found free of negligence when struck by an overtaking vehicle, even though the impact occurred in the passing lane rather than as here, off the highway. There we stated:
“One proceeding down a highway may presume that following traffic will abide by the standard traffic regulations and that such traffic will heed the forward motorist’s signals and allow him to perform his legal operations in safety. Nor is one, without notice to the contrary, held to anticipate the negligence of another.” (Citations omitted.) 203 So.2d at 743.
The writer respectfully dissents.