110 So.2d 816 (1959)
Elijah NEWMAN, Plaintiff-Appellee,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE CO., Defendant-Appellant.
No. 4768.
Court of Appeal of Louisiana, First Circuit.
March 23, 1959.
Rehearing Denied April 27, 1959.
*817 D'Amico & Curet, Baton Rouge, for appellant.
Grover L. Covington, Kentwood, for appellee.
Before ELLIS, LOTTINGER, TATE and FRUGÉ, JJ.
ELLIS, Judge.
Defendant has appealed from an adverse judgment by which plaintiff was awarded damages arising out of an automobile accident which occurred at about 1:30 p. m. on September 16, 1957 on Louisiana Highway 37, when a milk truck of the defendant, Charles W. Harrell, made a left turn into the private driveway of Euall Frazier and was struck in the left rear corner by the gravel truck being driven by the plaintiff.
The milk truck which weighed approximately 4,000 pounds was being driven by John Henry Davis, a young Negro man, in a westerly direction on Highway 38. The driver intended to make a left turn across the highway into the private road of Euall Frazier, looked into his rear view mirror, and pointed out a car across the street from the court room as being the distance at which he saw the plaintiff. Counsel for plaintiff without objection from anyone estimated this distance as 250 to 300 feet. He "pumped" his brakes two or three times, which presumably flashed the brake lights on, held his hand out for a left turn and drove to his left across the highway. When all of his truck had cleared the east bound or south traffic lane, except approximately four feet of the rear and it was struck by the left front of the gravel truck being driven by the plaintiff. The point of impact was established as approximately just to the south of the center of the south or east bound traffic lane. The plaintiff just prior to the accident attempted to pull or steer his truck to its right or north behind the milk truck, however, the front end went up under the rear end of the milk truck and the body of the gravel truck skidded around and struck the body of the milk truck and overturned the latter on its right side. It turned over completely off of the highway to the west of the private driveway of Euall Frazier. It is also established that there was 162 feet of skid marks made by the gravel truck in the south lane. The gravel truck continued into the north lane of traffic and swung around so that it was headed in a northeasterly direction when it stopped.
The driver of the milk truck stated that he heard no horn until practically the moment of the impact.
Plaintiff alleged, and so testified, that "desiring to pass the Harrell truck, pulled into the left lane and blew his horn signalling his intention and when plaintiff's vehicle was alongside, the said Davis suddenly and without any warning whatsoever, started making a left turn into a private driveway." There is one witness who lived close to the scene who was going from his home to his dairy barn, a distance of approximately 300 feet from the highway when the two trucks passed, and pointed out from the witness chair a filling station across the street as being the distance between the two trucks at that time. Counsel for plaintiff, without objection from anyone, estimated this distance as about 300 feet. As the plaintiff's gravel truck passed the witness heard this horn blow but stated on cross examination, "Whether he was blowing at me or blowing to pass the truck *818 I don't know. That's mostly how come me to notice the two trucks."
The driver of the milk truck had a passenger in his truck who corroborated the former in his version. Also testifying in the case was State Trooper Anderson who arrived approximately 35 to 45 minutes after the accident and found 162 feet of skid marks made by the gravel truck before the impact, and the point of impact to be just south of the center of the south lane of travel. He testified that the gravel truck in his opinion was traveling at an excessive rate of speed under the circumstances, basing this on the length of the skid marks and as the point of impact proved that the milk truck had practically completed the left turn and was almost or within four feet of being entirely off of the Highway 38, with more than a lane and a half width for traffic and particularly for plaintiff to have gone to its rear.
There was quite a conflict in the testimony as to whether a yellow line was in existence or painted to the east of the Euall Frazier driveway at the time of the accident. The fact that the operator of a motor vehicle passes, or attempts to pass, by crossing a yellow line placed there in order to warn him not to cross, would not per se render such motorist liable for damages unless the evidence showed that it was a proximate cause of the accident.
The core of the lower court's decision as shown in its written reasons was as follows:
"After hearing all the evidence, the court is of the opinion that the driver of the milk truck attempted to negotiate a left turn when the gravel truck was too close behind him, was already in the left lane of traffic and already in the act of passing; that he saw the gravel truck approaching under these circumstances, but nevertheless attempted to make the turn, when he should have known he could not make a turn safely; that such negligence was the proximate cause of the resulting accident.
"This conclusion is borne out by the testimony of the milk truck driver himself, who stated that when he looked in his rear view mirror just before making the turn, he saw the gravel truck behind him a distance he estimated to be about the same as the distance from where the witness was seated in the court room to a car parked just across the street. The court estimated this distance to be 120 feet, basing the estimation upon the fact that the street is very narrow at that point, perhaps slightly more than 20 feet, and the court house is set back from the street less than 100 feet."
Based upon the above quoted portion of the written reasons for judgment the lower court then stated that even if a hand signal was given by the milk truck driver, which plaintiff denied, it "was evidently given after he saw the gravel truck in his rear view mirror, which was then too late to properly warn the approaching vehicle." The lower court further stated in its written reasons:
"In any event, plaintiff, when confronted with a sudden emergency not of his own making, cannot be charged with negligence in not pursuing a course which subsequently appears would have been the most logical."
It is obvious from the established physical facts in this case that the plaintiff was considerably farther away from the milk truck than 162 feet at the time he became aware of the left turn of the milk truck. The record further reveals that defendant's driver stated that when he looked in his rear view mirror the milk truck was an estimated distance of 250 to 300 feet and on its proper side of Highway 51, to wit: the north or west bound traffic lane. Although the object which the defendant's driver pointed out from the witness stand as being the estimated distance between the trucks at the time he looked in his rear view mirror might actually have been 120 feet, we do not believe such distance should be accepted for at that point the plaintiff's truck was skidding and in *819 the left passing or south lane of traffic. It must also be remembered that plaintiff alleged and testified point blank that he was actually in the act of passing in that the front of his truck was about even with the door of the milk truck when the driver of the latter suddenly and without warning pulled to the left in his path. This is impossible under the established physical facts. He would have struck the milk truck at the door or forward of the door and the latter could never have reached the point in the driveway that it did prior to the impact. Further the record reveals that the cattle gap or entrance to the Frazier property was defective or in bad condition so that the milk truck had to slow almost to a stop in order to cross it. We believe that this case falls in the third class discussed in the recent case by this court of Johnson v. Wilson, 97 So.2d 674, 679, 681 and we quote therefrom:
"Cases holding free of negligence the left-turning driver, who made proper signal and commenced a left turn upon a reasonable belief after observing approaching traffic that such turn would not unduly interfere with the progress of such approaching traffic despite which an accident occurred; the sole proximate cause of which was held to be the excessive speed, lack of lookout, and/or lack of control on the part of the approaching vehicle in failing to observe the seasonably-signalled left-turn intent of the other vehicle and continuing an approach theretowards without attempting to bring the approaching vehicle under control. Delaune v. Crawford, La.App. 1 Cir., 39 So.2d 94; Chandler v. Sentell, La.App. 1 Cir., 35 So. 2d 260; Deffez v. Stephens, La.App. 1 Cir., 30 So.2d 154; Goynes v. St. Charles Dairy Inc., La.App. 1 Cir., 197 So. 819; White v. American Employers Ins. Co., La.App. 1 Cir., 197 So. 803. See Also: Moncrieff v. Lacobie, La.App. 1 Cir., 89 So.2d 471, Moore v. Benson, La.App. 2 Cir., 68 So. 2d 250; Sumrall v. Myles, La.App. 1 Cir., 51 So.2d 411; Russo v. Aucoin, La.App. 1 Cir., 7 So.2d 744; Weitkam v. Johnston, La.App. Orleans, 5 So.2d 582.

* * * * * *
"We are unable to accede to appellants' forceful argument that the left-turning driver is always barred from recovery when he proceeds to attempt a left turn, despite the presence of other traffic upon the highway. The left-turning driver is required to yield the right of way to and prohibited from attempting his turn unless the way is clear from not all approaching traffic, howsoever distant, butonly approaching traffic `which will be unduly delayed' by his turn, L.S.A.-R.S. 32:235, subd. A. * * *"
The driver of the milk truck, after giving his signal, looking in the rear view mirror and noting the distance between his truck and that of the plaintiff (approximately the same distance estimated by the witness who saw the passing truck just prior to the impact) could reasonably assume that he could safely make the left hand turn without "unduly" delaying the following gravel truck. The driver of the milk truck had the right to assume that the following gravel truck was being driven within the speed limit, that the driver was keeping a proper lookout, had noted his left-hand turn signal.
While the decisive question to be decided in this case is one of fact, and unless the judgment of the lower court is manifestly or clearly or obviously erroneous, and appellate court will not reverse, we are of the opinion that the conclusions of the lower court based upon the facts, and particularly the physical facts in the case under consideration, are manifestly erroneous.
For the reasons assigned the judgment of the district court is annulled and reversed and it is now ordered, adjudged and decreed that the suit of plaintiff be dismissed at his cost.
Reversed.