135 So.2d 494 (1961)
Clarence L. FAULKNER et ux., Plaintiffs-Appellants,
v.
RYDER TANK LINES, INC. et al., Defendants-Appellees.
No. 9586.
Court of Appeal of Louisiana, Second Circuit.
November 22, 1961.
Rehearing Denied December 27, 1961.
Certiorari Denied February 2, 1962.
*495 Barham, Wright & Barham, Ruston, for appellants.
Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellees.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiffs, husband and wife, seek the recovery of damages arising out of a motor vehicle collision of May 6, 1960, on U. S. Highway 80 in the village of Choudrant. The defendants are Ryder Tank Lines, Inc., and its public liability insurer.
Involved in the collision were plaintiffs' 1952 Model Pontiac panel truck and defendant's 1959 Mack truck and trailer combination. Both vehicles were proceeding in an easterly direction. The Pontiac, driven by Mrs. Faulkner, was followed at some distance by the Mack truck driven by Willie B. Parr. The highway, of a 2-lane construction, is of Bitulithic paving, with a surface 24 feet wide. The accident occurred as Mrs. Faulkner was about to complete a left turn into a side road or street. Defendant's truck, after skidding 120 feet in its left, or north, lane struck the left rear of plaintiffs' truck, knocking it onto the lawn of a residence east of the intersection. Defendant's truck then proceded *496 about 15 feet, coming to rest cross-ways of the highway.
Negligence charged to defendant's driver consists of
(1) excessive and unlawful speed,
(2) failure to keep a proper lookout,
(3) an attempt to pass at an intersection and over lines indicating a dangerous and prohibited passing zone, and
(4) failure to exercise due care in thus proceeding in a residential district.
Defendants, in their answer, denied any negligence on the part of their driver and, in the alternative, charged Mrs. Faulkner with contributory negligence in driving at a slow, unsafe rate of speed, in attempting a left turn when it was unsafe and without giving timely and adequate warning of her intention to do so, and in not keeping her car under control. However, upon trial, negligence of defendant's driver was conceded.
Therefore, the sole issue as to the question of liability relates to the charges of contributory negligence directed to Mrs. Faulkner. Important to a consideration of these charges is the nature of the negligence of which defendant's driver's guilt is conceded or admitted. First, the driver knew as he entered the corporate limit of the municipality that the speed limit therein was 35 m. p. h. Nevertheless, as admitted, he continued at a speed of at least 50 m. p. h. Also, he was well aware of the presence and the purpose of the double yellow lines down the center of the highway for a considerable distance from the scene of the accidentto warn traffic of an unsafe and prohibited passing zone. Nevertheless, he ignored the presence of these lines and crossed into his left-hand lane for the purpose of passing plaintiffs' truck. Moreover, the record establishes that the driver attempted the passing movement at an intersection in violation of law (LSA-R.S. 32:233, subd. E). The driver further admitted Mrs. Faulkner gave a proper signal of her intention to make a left turn. During the driver's aforesaid maneuver, the accident occurred.
From our review of the record, we are convinced that defendant's driver observed Mrs. Faulkner's vehicle for a distance of approximately one-tenth of a mile, or 528 feet; that, as she approached the intersection into which she intended to turn and when some 300 to 400 feet distance from the approaching truck, she signalled her intention to make a left turn and, immediately thereafter, began to reduce her speed from 30 m. p. h. and started the turn. From the driver's admission and the action taken in applying his brakes and skidding his wheels, it is obvious that he observed not only plaintiff's signal but her very act of turning.
The primary basis for the charges of contributory negligence against Mrs. Faulkner is that she failed to ascertain, before beginning her left turn, that the movement could be undertaken in safety and without unduly delaying the movement of normal traffic.
In judging whether a left turn can be made in safety, a motorist has the unquestioned right to assume that the following traffic will observe all of the duties imposed upon it by law and common sense, such as that the following traffic is proceeding within the speed limit, will not pass at an intersection, and will not pass over a double yellow line, and is, moreover, keeping a proper lookout. Green v. Plummer, La.App. 1st Cir., 1960, 119 So.2d 862; Newman v. Southern Farm Bureau Casualty Ins. Co., La.App., 1st Cir., 1959, 110 So.2d 816; Kelly v. Neff, La.App. 2d Cir., 1943, 14 So.2d 657; White v. Neff, La.App. 2d Cir., 1942, 11 So.2d 289.
It is also well recognized that a motorist who desires to make a left turn on a city street is not required by law to wait until there is no traffic in sight before attempting *497 to do so. He has the unquestioned right to move after he has made a close and careful survey of traffic conditions about him and honestly believes, from such survey, that conditions warrant such action; he is entitled to rely upon the presumption that the other motorists in sight are observing and will continue to observe the speed regulations. When a motorist acts in such circumstances and a collision occurs because of the speed of the other motorist, the obvious and proximate cause of the accident is the excessive speed. Green v. Plummer, supra; Newman v. Southern Farm Bureau Casualty Ins. Co., supra; Kelly v. Neff, supra; White v. Neff, supra.
Moreover, the driver intending or attempting a left turn is not required to yield the right of way to all approaching traffic, however distant, but only to such approaching traffic as will be unduly delayed by his turn. LSA-R.S. 32:235, subd. A; Newman v. Southern Farm Bureau Casualty Ins. Co., supra.
As to the questions herein presented, it was very appropriately observed in Paggett v. Travelers Indemnity Company, La.App. 2d Cir., 1957, 99 So.2d 173, 176:
"The general principle, as enunciated and emphasized in the cases cited, that a left-hand turn is a most dangerous operation and is not to be undertaken until a driver ascertains that it can be performed in safety, is now so well established and so firmly imbedded in our jurisprudence as to admit neither question nor argument. But it must be borne in mind that every general rule is subject either to exception or to modification in the light of the facts of a particular case. We very much fear that our courts may have been guilty of some overemphasis in the establishment and reiteration of this rule, which has resulted in the assumption that the driver of a vehicle who undertakes a left-hand turn is guilty of negligence, per se, in the event an accident occurs. Certainly, this result was never intended. Under the facts which we consider to have been well established in the instant case, if it should be held that the driver of the Smedley car was guilty of negligence, it would be difficult to imagine an instance in which a left-hand turn could be made without an imputation of negligence. * * *"
The evidence is most convincing that defendant's driver was moving at a grossly excessive speed; that he attempted to pass in a forbidden zone; that he saw plaintiff's left-turn signal, but was unable to bring his vehicle under control; and that these acts of negligence constituted the sole, proximate, and effective causes of the accident.
A driver, under the well-established facts of this case, intending to make a left turn into a street intersection within the corporate limits of a city, town, or village, having observed approaching traffic to the rear moving in the right-hand lane at a distance of some 300 to 400 feet, has a right to rely upon the following assumptions:
(1) that the driver of the following vehicle will not grossly exceed the reduced speed limit;
(2) that said driver will not recklessly cross a double yellow line in the highway, established and recognized as an absolute prohibition against a passing movement; and
(3) that the said driver will not attempt to pass at an intersection, which action is prohibited by law.
At the time Mrs. Faulkner made her observation of defendant's truck and of traffic conditions generally to her rear, gave a signal of her intention to turn, and began such turn, the record does not disclose any indication that defendant's driver would disobey any, much less all, of the aforesaid prohibitions against a passing movement. Therefore, Mrs. Faulkner was fully justified in relying upon these assumptions.
*498 A motorist proceeding strictly in compliance with law, as we have heretofore pointed out, has a right to assume that other motorists will likewise observe the law, and such motorist can indulge in this assumption until he sees, or should see, that the other motorists have not observed, or are not going to observe, the law. Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849.
While the aforesaid cases involved intersectional collisions, the principles are not so restricted but are applicable anywhere on a highway. For instance, in Kientz v. Charles Dennery, 209 La. 144, 24 So.2d 292, 295, the Supreme Court quoted, with approval, an observation made in a dissenting opinion in the Court of Appeal by Judge (now Associate Justice) McCaleb who stated (17 So.2d 506, 513-514):
"We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred."
See, also, Youngblood v. Robison, 239 La. 338, 118 So.2d 431.
It cannot, therefore, be said, under the facts of this case, where Mrs. Faulkner was operating her vehicle in obedience to positive law, that she was guilty of any dereliction of duty of a substantial and direct factor so that, without it, the accident would not have occurred.
Defendants cite and rely upon the case of Ruple v. Travelers Indemnity Company, La. App. 2d Cir., 1961, 129 So.2d 240, as did the trial court, as authority for the proposition that Mrs. Faulkner should have looked into her rearview mirror to observe the location of the oncoming truck just prior to her turn. The Ruple case and the cases cited therein are readily distinguishable from the instant case. In all of those cases, except that of Jenkins v. Fidelity and Casualty Co. of New York, La.App. 1st Cir., 1957, 92 So.2d 120, the left turn was made, or attempted, on an open highway where the maximum speed limit was 60 m.p.h. and not within an incorporated municipality where the speed limit was 35 m.p.h. A left-turn driver, in those cases, was making his turn not at a street or road intersection but into a private driveway. Also, in all of those cases, the fact that a left-turn signal was given was either disputed or not established. Moreover, the following vehicles attempting to pass were not exceeding the lawful speed limit, nor were the passing movements undertaken in an unsafe or prohibited passing zone. In the Jenkins case, the accident occurred 90 feet east of an intersection; while the rear vehicle was in a passing movement, the forward car turned into its left lane scarcely 20 feet in front of the passing vehicle; whereas, the accident in the instant case occurred at the intersection. Mrs. Faulkner's vehicle, at the time of the accident, was headed into a side street, with the rear of the vehicle in the north half or westbound traffic lane.
Nor do we find any merit in the contention that Mrs. Faulkner had the last clear chance to avoid the accident. The doctrine of last clear chance would more properly have application to defendant's driver. Considering the normal reaction time and the speed of defendant's driver, defendant's truck was probably 200 feet or more to the rear of Mrs. Faulkner's vehicle when he realized she had entered the left-hand lane and was making a left turn. Had defendant's driver been keeping a proper lookout and driving at a lawful rate of *499 speed, he, by the exercise of reasonable precaution, could and should have taken evasive action to prevent the accident. The opportunity to do so was his and not Mrs. Faulkner's.
The burden was upon the defendants to establish contributory negligence on the part of Mrs. Faulkner. This burden, in our opinion, has not been established to a legal certainty by a preponderance of the evidence. Hence, we are constrained to, and do, disagree with our learned brother of the trial court on the question of liability.
Lastly for consideration is the quantum of damages. Mrs. Faulkner's injury was diagnosed by Dr. D. F. Overdyke, Jr., orthopedist, her examining and treating physician, as a cervical sprain superimposed on an arthritic neck, followed with a typical complicating occipital neuralgia. On the occasion of the doctor's first examination, there was noted stiffness and soreness of both shoulders, neck, and shoulder blades associated with headaches and pain in the back of her neck. X-rays made at the time disclosed a very arthritic neck, particularly in the small joints, in the second and third cervical vertebrae and in the fifth, sixth, and seventh vertebrae, with encroachment of the arthritic process on the neural canal and on the intervertebral notches. Mrs. Faulkner was also suffering from diabetes.
While neither the arthritis nor diabetes was caused by the accident and, while considerable doubt was cast upon their aggravation by the accident or through the injuries sustained therein, yet the consensus of Dr. Overdyke is that these diseased conditions aggravated the injuries sustained and prolonged plaintiff's recovery.
That Mrs. Faulkner suffered considerable pain and discomfort and continued to so suffer for a considerable period is fully established by the evidence. A period of 30 months was estimated for maximum recovery, following which it was also estimated that plaintiff would have a permanent disability ranging from 5 to 12%, dependent upon her response to treatment. The probability is also that, after Mrs. Faulkner has reached a state of maximum recovery, she will continue to experience some pain and discomfort.
The injuries sustained by Mrs. Faulkner were in the nature of a whiplash, although not so characterized by Dr. Overdyke because of the disrepute of the term from a medical viewpoint. Mrs. Faulkner, however, was, during her treatment by Dr. Overdyke, confined to the hospital on two occasions covering a period of some five or six days each.
Considering the nature and extent of plaintiff's injuries, the pain and discomfort experienced, and to be experienced in the future, as well as the permanent effects of the injuries resulting in the slight permanent disability in the body as a whole, and as to the slight tilting of her head and neck, we are of the opinion that an award of $5,000.00 is adequate in compensation.
The record disclosed that medical expenses of $861.00 have been incurred. Future medical expenses are estimated at $450.00. The truck was damaged to the extent of $500.00.
Plaintiff and her husband were both engaged in their electrical, TV and radio shop. They withdrew from the business the sum of $45.50 per week for living expenses. One-half of this, or $22.75, is credited to each of them. Mrs. Faulkner's period of disability, estimated at 30 months, comprises a period of 130 weeks. The wages, or earnings, of Mrs. Faulkner for the aforesaid period, at the aforesaid rate, would aggregate $2,957.50. This should be allowed for the loss of wages. While it is reasonable to conclude that this amount does not include all of Mrs. Faulkner's earnings, whatever she earned over and above the amount withdrawn weekly could only be classified as profits of the business, as to which there is insufficient evidence for an award to be predicated thereon.
*500 For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside, and
It is now Ordered, Adjudged and Decreed there be judgment herein in favor of plaintiff, Mrs. Bernice H. Faulkner, for the full sum of $5,000.00, and in favor of plaintiff, Clarence L. Faulkner, for the full sum of $4,768.50, against the defendants, Ryder Tank Lines, Inc., and Liberty Mutual Insurance Company, in solido, together with 5%' per annum interest on both of said sums from judicial demand until paid, and for all costs.
Reversed and rendered.