228 So.2d 91 (1969)
Charles E. and Martha F. WATERS, Plaintiffs-Appellees,
v.
PHARR BROS., INC., et al., Defendants-Appellants.
No. 11190.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1969.
On Rehearing September 22, 1969.
Rehearing Denied October 20, 1969.
Writ Refused December 19, 1969.
Mayer & Smith, Alex F. Smith, Jr., Shreveport, for appellants.
James M. Barton, Shreveport, for appellees.
Before AYRES, BOLIN and PRICE, JJ.
PRICE, Judge.
This is a tort action in which the plaintiff, Charles E. Waters, and his wife, Martha F. Waters, seek to recover damages for personal injuries and property damages arising out of a two vehicle collision on June 15, 1966, in Mira, Louisiana. The defendants are Pharr Bros., Inc., Coy Franklin Finklea, and Employers Mutual Fire Insurance Company. On this date, plaintiff, Mrs. Martha F. Waters, was driving a 1963 Chevrolet sedan automobile northerly on U. S. Highway 71 approaching the community *92 of Mira in North Caddo Parish. A 3½ ton dump truck, being driven by Coy Franklin Finklea, was following the Waters' automobile. Louisiana State Highway No. 169 intersects U. S. Highway 71 in the main business area of Mira, forming a "T" intersection on the westerly side of U. S. Highway 71.
At the time of this accident the shoulders of U. S. Highway 71, on the west side, were under construction and a portion of its intersection with Louisiana Highway 169 was blocked by a barricade. Mrs. Waters attempted to make a left turn from U. S. Highway 71 into Louisiana Highway 169 by proceeding through a parking area situated adjacent to the intersection on the northerly side. After the Waters car began its left turn it was struck by the dump truck driven by defendant, Finklea, who was attempting to pass the Waters vehicle.
Plaintiffs allege negligence on the part of the truck driver for passing in a prohibited zone, following too close, and failing to keep a proper lookout to see the indicating signal of the preceding vehicle.
Defendants deny any negligence on the part of Finklea; they contend the double yellow lines marking the prohibited passing zone were not visible due to dirt caused by the construction. Defendants further contend that Mrs. Waters was also guilty of negligence which was either the sole cause, or a contributing cause, of the accident. She is charged with negligence in failing to signal and in failing to keep a proper lookout, making a left turn without first making certain it could be made safely, and in making a left turn in the path of defendant's truck.
After a trial on the merits the district court found that the sole cause of the accident was the negligence of the defendant, Finklea, in passing in a prohibited zone and awarded judgment in favor of Mrs. Waters for $4,000.00 for her personal injuries, and awarded Mr. Waters the sum of $2,314.03 for medical expenses paid for his wife, and automobile damages.
Defendants have appealed to this court, urging that the district judge committed error in not finding Mrs. Waters was guilty of negligence which was the sole cause of the accident, or, alternatively, at least a contributing cause of same.
Plaintiff answered the appeal, asking for an increase in the award to Mrs. Waters for personal injuries.
The trial court heard the testimony of Mrs. Waters, her mother, and her fourteen-year old daughter, who were passengers in the automobile. They testified that the truck had been following their automobile a close interval for some distance; that Mrs. Waters turned on her left turn indicator some distance before making the turn; that the Waters car was proceeding at a speed of between 20 and 25 miles per hour just before turning and slowed to a speed of approximately 10 miles per hour as it turned.
Mrs. Waters testified that she had been aware of the truck behind her for some distance and that she looked back just prior to making her turn and that it was still in the lane behind her.
Mr. Finklea testified that he had attempted to pass Mrs. Waters on one occasion previous to the collision but was unable to do so because of oncoming traffic. He further testified that he was following at an interval of between 30 and 40 feet as they entered the community of Mira. He testified that a car in front of Mrs. Waters slowed to make a right turn into a private drive and that he seized this opportunity to attempt to pass Mrs. Waters. He further testified that she gave no signal of her intent to turn and that he was completely in the left lane when she began to turn. He also testified that the double yellow lines, indicating passing was prohibited, had been covered by dirt because of the construction in the area, and that he gave no warning by blowing his horn prior to pulling into the left lane to pass Mrs. Waters.
*93 The investigating officers' testimony establishes the skidmarks of the truck at 32 feet, which were entirely in the left or passing lane. There was a conflict in the testimony of the two officers who investigated the accident as to whether Mrs. Waters stated she had turned on her left turn indicator. The deputy sheriff arrived on the scene first and testified that she definitely told him she had her indicator on prior to beginning the turn. A state trooper, who made out the accident report some time after the collision, indicated on the report that Mrs. Waters could not remember whether she signaled. He did not have any independent recollection and was relying solely on his written report. Both officers agreed that the indicator was working properly after the accident.
It is apparent that the trial judge found from the testimony that Mrs. Waters gave a proper signal. She was traveling in a zone where passing was clearly prohibited by law. The intersection into which Mrs. Waters intended to turn required more than the usual or normal observation by a driver in that a portion of the intersection was barricaded and a truck was blocking the other lane. Mrs. Waters testified that she intended to proceed into the parking lot of a cotton gin adjacent to the intersection to detour around the blocked intersection. It would, therefore, be reasonable to assume that she could not have maintained a constant watch to her rear and have negotiated the difficult turn. She had the right to assume that, because of the conditions that existed in this particular area and in view of the prohibited passing zone, no following vehicle would attempt to pass her at this time. She testified that she had looked behind her prior to making the turn and that the truck was still in her lane at that time. It may well be that, in the few seconds that she utilized in selecting her route through the barricaded intersection, the truck pulled into the passing lane and eluded her watchout.
There is no question of the negligence of defendant, Finklea, as the evidence shows that he attempted to pass a vehicle in a prohibited zone and at an intersection made additionally dangerous by the presence of road construction in progress. He admitted having passed through the area on previous trips, hauling gravel from Arkansas to Shreveport, either the same or on previous days and was therefore familiar with the prohibited passing zone even though the yellow lines may have been obscured by an accumulation of dirt.
In support of their position that Mrs. Waters was guilty of at least contributory negligence, the appellants have urged the application of the principles laid down in the cases of Washington Fire and Marine Insurance Co. v. Firemen's Ins. Co., 232 La. 379, 94 So.2d 295 (1957); Small v. Lyons, La.App., 198 So.2d 475 (2d Cir., 1967), and Wheeler v. Simonton, La.App., 215 So.2d 359 (2d Cir., 1968), imposing a high degree of care on a left turning motorist to make certain that his turn can be made in safety before executing the turning maneuver. We believe that the instant case is somewhat different from the cited cases.
In the case of Faulkner v. Ryder Tank Lines, Inc., La.App., 135 So.2d 494 (2d Cir., 1961), this court declared the duty of a left turning motorist in ascertaining whether or not the movement can be made in safety as to following traffic, as follows:
"In judging whether a left turn can be made in safety, a motorist has the unquestioned right to assume that the following traffic will observe all of the duties imposed upon it by law and common sense, such as that the following traffic is proceeding within the speed limit, will not pass at an intersection, and will not pass over a double yellow line, and is, moreover, keeping a proper lookout. Green v. Plummer, La.App., 1st Cir., 1960, 119 So.2d 862; Newman v. Southern Farm Bureau Casualty Ins. Co., La.App., 1st Cir., 1959, 110 So.2d *94 816; Kelly v. Neff, La.App.2d Cir., 1943, 14 So.2d 657; White v. Neff, La. App., 2d Cir., 1942, 11 So.2d 289."
The Faulkner case, and others cited therein, have been followed by the Third Circuit Court of Appeal in the case of Hudgens v. Mayeaux, La.App., 143 So.2d 606 (3rd Cir., 1962). We believe that the rules laid down in the Faulkner and Hudgens cases, supra, and the cases cited therein, are more appropriate to the facts of the case under consideration than the line of cases following the Washington Fire and Marine Insurance Co. v. Firemen's Ins. Co., supra, cited by appellant.
Under the facts and circumstances that existed in this case, we are of the opinion that there was no manifest error in the finding of the trial judge that the sole and proximate cause of this accident was the negligence of the defendant, Finklea, in attempting to pass Mrs. Waters in the prohibited zone and that the evidence is not sufficient to establish contributory negligence on the part of Mrs. Waters.
Appellants, in brief, have not complained of the award made by the trial court for personal injuries. Although the appellee has answered the appeal and asked for an increase in this award, we do not find any manifest error in the award made by the trial judge.
Mrs. Waters suffered a whiplash type of injury to her cervical area. The medical diagnosis was a moderate cervical sprain with some resulting occipital neuralgia. Mrs. Waters was hospitalized for two weeks and was treated with physiotherapy for a number of months thereafter. Complaints of headaches were attributed to the cervical sprain, and although they continued for a number of months after the accident, the treating orthopedist was of the opinion the headaches would subside with therapy or nerve blocks. The evidence does not indicate any permanent injury or disability to Mrs. Waters.
For the foregoing reasons, the judgment appealed from is affirmed at appellants' cost.
BOLIN, Judge (dissenting).
I agree with the factual findings of the majority but respectfully submit an error of law was committed in failing to find plaintiff guilty of contributory negligence.
La.R.S. 32:101 and 32:104 and cases decided thereunder, establish a cardinal rule of the road, i.e., a left turn by a motorist is a dangerous maneuver and must not be undertaken unless the driver ascertains it can be made in safety.
Plaintiff admits she had been observing the truck following her for some distance prior to making the left turn. There is no finding the truckdriver was speeding. If plaintiff did not see the truck as she began the left turn she should have because it had to be in the left lane for an appreciable length of time in order to lay down 32 feet of skid marks in that lane. Plaintiff simply did not maintain a lookout to her rear in order to ascertain if the left turn could be made in safety.

ON REHEARING
Before AYRES, BOLIN and PRICE, JJ.
BOLIN, Judge.
The negligence of defendant truck driver, Mr. Finklea, in overtaking and passing a vehicle in a prohibited zone indicated by double yellow lines, is correctly set forth in our original opinion as being a proximate cause of the accident. Rehearing was granted primarily to give more consideration to the alleged contributory negligence of plaintiff, Mrs. Waters.
We find defendants have carried the burden of proving Mrs. Waters was guilty of negligence, which contributed to the accident. Mrs. Waters testified Finklea's truck had been "tailgating" her car for approximately 2½ to 3 miles immediately preceding *95 her attempted left-turn maneuver. She said she was aware of the constant presence of the truck to her rear and had complained to her guest passenger that she wished "he wouldn't ride my bumper". Mrs. Waters was driving at a moderate rate of speed of between 20 to 25 miles per hour, and Finklea was traveling at approximately the same speed.
Mrs. Waters testified she engaged her left-turn blinker light several hundred feet before she began her left turn. This testimony is refuted by Finklea and the trial judge made no finding on this fact. Mrs. Waters further testified she looked in her rear view mirror about the time she gave her left-turn signal and the truck was still in its proper lane directly behind her car. She did not look again to her rear to ascertain the location of the truck. From the time she last looked into her rear view mirror until she began her left turn the truck had overtaken her and had commenced the passing maneuver. When she turned left the collision occurred. The truck skidded approximately 32 feet prior to the impact and the skidmarks were straight and entirely within the passing zone or to the left of the Waters vehicle.
Conceding Mrs. Waters gave a left-turn signal, we find she did not give it until the truck was already in the process of overtaking and passing her car. There is no evidence the truck driver was driving at an excessive rate of speed. If Mrs. Waters had continued to observe to her rear until she made her left turn she would or should have seen the overtaking truck.
A motorist proceeding in compliance with law has a right to assume that other motorists will likewise observe the law, and such motorist can indulge in this assumption until he sees or should see that the other motorist has not observed or is not going to observe the law. Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339 (1959). Therefore, when Mrs. Waters gave her signal to turn left approximately 300 feet before reaching the side road she had a right to indulge in the assumption Finklea would not violate the law by passing in a prohibited zone. However, she could only indulge in this assumption until she saw or should have seen him crossing the double yellow lines and making his passing maneuver. She says she did not see him overtaking and passing her; however, she should have, since the uncontroverted facts show his truck was in the left lane before she commenced her left turn. Therefore, she was derelict in her duty in failing to maintain a lookout to her rear before attempting her left turn. This negligence on her part was a proximate cause of the accident and, therefore, she is barred from recovery under the special plea of contributory negligence filed by defendants.
In an effort to exonerate Mrs. Waters from negligence, plaintiffs cite the cases of Faulkner v. Ryder Tank Lines, Inc., (La. App. 2 Cir. 1961), 135 So.2d 494, and Hudgens v. Mayeaux, (La.App. 3 Cir. 1962), 143 So.2d 606, which cases were also relied upon by this court in our original opinion. The cited cases are factually different from the instant case. In Faulkner the passing driver was guilty of several acts of negligence, one of which was excessive speed. The court, therefore, properly found the driver of the lead vehicle acted reasonably and prudently in assuming she had ample time to complete her left turn before the truck to her rear would overtake and pass her. In Hudgens the court likewise found the overtaking motorist driving at a grossly excessive rate of speed.
Since Mrs. Waters was guilty of contributory negligence, and since there was no evidence she was not on a community mission, the demands of her husband for expenses incurred by the community on her behalf are also barred.
The judgment appealed from is reversed and the demands of plaintiffs are rejected at their cost.
*96 PRICE, Judge (dissenting):
I must respectfully dissent from the majority opinion. It is recognized in the opinion that the left-turning motorist may presume that following traffic will obey all traffic laws and not pass in a prohibited zone. Not only did the driver of a large dump truck disobey the law prohibiting passing in a zone marked by a yellow line and prohibiting passing at an intersection, but he also passed in the commercial area of the community of Mira. The driver of a left-turning vehicle in a commercial area must be more concerned with the path her vehicle is traveling into rather than watching intently for following traffic. The evidence in the record in this case showed the intersecting street to have construction in progress, making it all the more necessary that the left-turning vehicle driver be more observant to her forward path. The driver of the turning vehicle would least expect a following driver to commit such a grossly negligent act as attempting to pass in the area involved.
For these reasons I am of the opinion that the trial judge was correct in finding that the negligence of the truck driver was the sole proximate cause of this accident.