BLANCHE, Judge.
This suit was instituted by George Beraud and his wife, Earma Beraud, against Warren Blount and his liability insurer, Allstate Insurance Company, for damages sustained by them in an automobile accident. The facts as found by the trial court show that both Mrs. Beraud and Mr. Blount were traveling in a westerly direction on U. S. Highway 190, a two-lane highway, on the evening of April 23, 1968. The collision occurred three-tenths of a mile west of Hammond, Louisiana, when Mrs. Beraud, who had been driving behind defendant’s truck, attempted to pass him. As Mrs. Beraud pulled into the passing lane and was in the process of passing defendant, he executed a left turn in front of her for the purpose of entering a private parking lot, thus placing his vehicle in the path of plaintiffs’ car, causing plaintiff to strike the truck in the left rear and causing damage to the right front of plaintiffs’ automobile. The trial judge found that although the accident occurred in a no-passing zone, the plaintiff had commenced her passing maneuver in advance of the no-passing zone and would have been able to pass safely if the defendant had not turned in front of her. The trial judge, therefore, found that the “sole and only cause in fact of this accident was the negligence of Warren Blout in executing a left turn into the path of an overtaking and passing vehicle.”
The defendants-appellants contend that the trial judge erred in failing to find that the plaintiff was contributorily negligent in that her passing in a no-passing zone, a violation of a criminal statute, was negligence per se causing the accident in question, and the plaintiff should therefore be barred from recovery. In other words, the defendants allege that the mere violation of a statutory duty by the plaintiff requires an ipso facto application of contributory negligence.
There is little doubt that the plaintiff violated LSA-R.S. 32:77, the statutory prohibition against passing in a no-passing zone. That statute states:
“ * * * Where signs or markings are in place to define a no-passing zone * * * no driver shall at any time drive on the left side of the roadway within such zone * * * throughout its length. * * * ” (Emphasis added.)
The trial court found that the accident occurred at a point where there was a yellow line on the westbound side of the road indicating a no-passing zone for westbound traffic. It is irrelevant for our purposes that the plaintiff began her passing maneuver prior to the no-passing zone. The statute prohibits driving in the left lane; therefore, the fact that plaintiffs’ vehicle did not actually traverse the yellow line at the time she began her passing maneuver is of no consequence. The fact that plaintiff found herself opposite the “yellow line” or in a no-passing zone at the time the accident occurred does not require here our finding that such conduct amounted to negligence. Mrs. Beraud had commenced her passing maneuver and could have done so in perfect safety as the way was clear of oncoming traffic. Except for the defendant’s having negligently made a left turn in front of Mrs. Beraud at a time when he should have observed her in the act of passing him, there would have been no accident. In other words, the conduct of the plaintiff in violating the statute prohibiting passing was not a cause-in-fact of the accident. We are also of the opinion that the purpose of the no-passing zone at the point of the accident was not for the protection of the left-turning driver but for the protection against collision of vehicles meeting in a curve. As stated in Dixie Drive it Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), the proper “inquiry is whether the risk and harm encountered by the [defendant] fall within the scope of protection of the statute. It is a hazard problem.” (137 So.2d, at 304) Accordingly, we are of the opinion that the trial judge did not err in *404 finding that the purpose of the yellow line under the circumstances presented by this particular case was to protect against collisions between eastbound and westbound traffic only. The lower court found:
“ * * * It is obvious from the photographs [introduced in evidence] that the purpose of the no passing markings is to prevent conflict between passing vehicles proceeding in a westerly direction and those headed in an easterly direction approaching from around a curve located approximately a quarter of a mile west of where the markings commence.” (Written Reasons for Judgment, Record, p. 29)
While appellants contend that the trial judge was incorrect in this determination, they offer no authority whatsoever to directly support their contention. Instead, they cite cases in which the no-passing zone was present at an intersection, Waters v. Pharr Brothers, Inc., 228 So.2d 91, 95 (La.App. 2nd Cir. 1969), writ refused, 254 La. 1101, 229 So.2d 113; or where the overtaking vehicle violated several safety statutes, see, e. g., Spell v. Travelers Insurance Company, 232 So.2d 133 (La.App.3rd Cir. 1970). In our examination of relevant authorities, we have found that in each instance where a driver has been held negligent for passing in a no-passing zone, there have been factual considerations which would enable the trial judge to conclude that the no-passing zone was placed upon the highway to protect against the risk of the negligent conduct which did in fact take place. See Bohlender v. Bayou Tours, Inc., 156 So.2d 255 (La.App.4th Cir. 1963), certiorari refused, 245 La. 459, 158 So.2d 611, 245 La. 460, 158 So.2d 612 (where the no-passing zone was designed to protect against the risk of head-on collisions); Faulkner v. Ryder Tank Lines, Inc., 135 So.2d 494, 498 (La.App.2nd. Cir. 1961), certiorari denied; cf. Hoover v. Wagner, 189 So.2d 20, 24-27 (La.App.1st Cir. 1966), writ refused, 249 La. 735, 190 So.2d 241; Sterling v. Ritchie, 182 So.2d 735, 737 (La.App.1st Cir. 1966) (where the Court indicates that although there was, perhaps, a technical violation of a statute prohibiting passing at an intersection, the risk of the conduct which did in fact occur was not protected by the statute).
Therefore, for the violation of a highway safety statute to result in a finding that the violation was actionable negligence or actionable contributory negligence, the conduct complained of must be a cause-in-fact of the accident and the purpose of the statute must proscribe the conduct causing the accident and injury. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, cited supra.[1]
After the accident Mrs. Beraud complained of severe pain in the low back area and left lower extremity. Examination by Dr. Stander revealed a spondylolis-thesis or forward slipping of the fifth lumbar vertebra. A myelogram was performed and surgery followed to remove the ruptured disc and effect a fusion at the interspace between L-4 and L-5. Thereafter, she was hospitalized for a period of three weeks. In addition to pain and suffering, Mrs. Beraud sustained a fifteen percent permanent disability as a result of the operation which the trial court related to the accident. The trial court also found evidence that spondylolisthesis existed before the date of the accident and that due to the preexisting condition the plaintiff had undergone surgery some twelve years prior to the accident. The evidence likewise shows that whatever spondylolisthesis the plaintiff had prior thereto, it did not manifest itself in a symptomatic state until the occurrence of the accident. Thus, a finding that prior thereto Mrs. Beraud was not in such a state of pain and discomfort as would require her to undergo surgery with its consequential permanent disabilities is amply justified. We, accordingly, *405 approve the award to Mrs. Beraud in the sum of $7,500 as compensation for her injuries.
The lower court also awarded $1,853.10 to plaintiff, George Beraud, for medical expenses, all of which were proved on trial and which we likewise approve.
Appellees have answered the appeal seeking an increase in the award to plaintiff, George Beraud, from $1,853.10 to $4,525.85 and an increase in the award to Earma G. Beraud from $7,500 to $50,239.65.
Those items of special damages awarded to George Beraud are enumerated by the trial judge as follows:
“The medical expenses incurred in the treatment of Mrs. Beraud for her injuries and which have been proved adequately in order to recover are itemized as follows: Dr. Alvin Stander — $541.00; Dr. H. Arriaga — $130.00; Dr. Walter Hennigan — $95.00; Dr. Robert Starnes— $10.00; Baton Rouge General Hospital —$181.39 [increased to $885.49 by Amended Reasons for Judgment rendered November 16, 1970]; Seventh Ward Hospital — $23.00; Drugs — $11.91; Stevens Ambulance — $36.50; Ambulance Service — $44.80; Snells Limb & Brace —$75.40; amounting [to] a total of $1,149.00 [increased to $1,853.10 by Amended Reasons for Judgment rendered November 16, 1970].” (Written Reasons for Judgment, Record, pp. 31, 32.)
We find that the foregoing were the only damages proved by Mr. Beraud, and, consequently, his demand for an increase is not supported by the evidence.
With regard to the increase asked for by Mrs. Beraud, we are satisfied from the foregoing review of her injuries that the trial judge did not abuse his discretion and' that the award in her favor is not inadequate.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellants’ costs.
Affirmed.

. Compare the Dixie analysis with the Court’s approach, per Justice Barham, in Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970).