486 So.2d 243 (1986)
Barbara COURMIER, et al., Plaintiffs-Appellees,
v.
TRAVELERS INSURANCE CO., et al., Defendants-Appellants.
No. 85-81.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1986.
Writ Denied June 6, 1986.
*244 Michael Hantel, New Orleans, for defendants-appellants.
Thompson & Sellers, Roger C. Sellers, Rebecca Kirk, Abbeville, for plaintiffs-appellees.
Before GUIDRY, FORET and HOOD,[1] JJ.
GUIDRY, Judge.
This is a suit for damages for personal injuries sustained by the plaintiff, Barbara Courmier, when a collision occurred as she was turning left while defendant, Ricky L. Huval, was simultaneously attempting to pass in the left hand lane. This suit was filed by Barbara J. Courmier against Ricky L. Huval (Huval), the driver of the passing vehicle, Schlumberger Offshore Services (Schlumberger), a division of Schlumberger, Limited, the employer of the defendant driver, and Travelers Insurance Company (Travelers), the insurer of Schlumberger and Huval. Another suit was filed, as a result of this accident, by Lucille Runnion, individually and as provisional tutrix of Beverly Courmier, a minor child and a passenger in the left turning vehicle, against the same three defendants, plus State Farm Mutual Automobile Insurance Company, the insurer of Barbara Courmier. The two suits were consolidated. As a result of a settlement on the day of trial, State Farm was dismissed with full prejudice from the Runnion suit by joint motion of Lucille Runnion and State Farm, with Lucille Runnion reserving her rights against the other defendants.
The trial court concluded that the accident was caused by the concurrent negligence of Ricky Huval and Barbara Courmier, with Huval being attributed 90% of the *245 fault and Courmier 10% of the fault. The trial court then awarded Barbara Courmier $193,399.53 for past and future loss of income; $75,000.00 in general damages; and, $14,294.66 in special damages, for a total of $282,694.19. This total amount was then reduced by her 10% comparative negligence, and further reduced by $2,023.50 in advances made by Travelers for a net recovery of $252,401.28, together with legal interest from date of judicial demand until paid. Judgment was also rendered in the companion matter in favor of Lucille Runnion, individually and as provisional tutrix of the minor child, Beverly Courmier, and against Huval, Schlumberger and Travelers for $13,038.26, together with legal interest from the date of judicial demand until paid. This award included $8,000.00 in general damages and $5,038.26 in special damages. Beverly Courmier's award was not reduced, in spite of her settlement with State Farm.
Defendants suspensively appealed the judgments in both cases. Barbara Courmier, answered the appeal requesting an increase in the award to her for future loss of wages. Lucille Runnion, did not answer the defendants' appeal.
We will decide all issues in both cases in this opinion but render a separate decree in the companion matter entitled Runnion, et al v. Travelers Insurance Co., et al, 486 So.2d 251 (La.App. 3rd Cir.1986).
The appellants present three issues for our review:
1. Did the trial court err in assessing 10% negligence to plaintiff, Barbara Courmier, and 90% negligence to defendant, Ricky Huval?
2. Was the award of damages to Barbara Courmier excessive?
3. Was the award of damages to Lucille Runnion, individually and as provisional tutrix of her minor child, Beverly Courmier, excessive?

FACTS
The trial judge set forth his findings of fact in well considered reasons for judgment. We consider the issues presented for review in light of these factual findings which are amply supported by the record and which we are pleased to adopt as our own.
"Having heard the testimony of the witnesses, and after reviewing the evidence and exhibits presented at trial, it is uncontraverted by the parties and the Court finds that on September 4, 1982, plaintiffs, Barbara Courmier and her thirteen year old minor sister Beverly Courmier, were involved in an automobile accident with defendant, Ricky L. Huval. Barbara Courmier was driving a 1977 AMC Pacer, belonging to her mother, Lucille Runnion, and Beverly Courmier was the only passenger. Defendant Ricky Huval was driving a 1980 GMC five ton flatbed truck owned by his employer, Schlumberger, and his brother, Danny Lee Huval, was the only passenger. At the time of the accident, Ricky Huval was driving the truck while in the course and scope of his employment with Schlumberger.
The accident occurred at approximately 11:00 a.m. on La.Hwy. 82 approximately fifteen feet south of the intersection with La.Hwy. 691. That intersection is near the end of a double S-curve in Hwy. 82 and is controlled by a flashing yellow light in favor of Hwy. 82. The area is marked as a "no passing zone" by double yellow lines on Hwy. 82 before and after the intersection. Additionally, a school is located adjacent to the intersection and there is a school zone sign with a flashing yellow light on Hwy. 82.
Immediately prior to the accident both vehicles were traveling south on Hwy. 82. Ricky Huval testified, and the evidence establishes, that before reaching the intersection he crossed the double yellow lines in an attempt to pass plaintiff's vehicle. The accident occurred when Barbara Courmier attempted to make a left turn just past the intersection into the parking lot of Mouton's Grocery Store. The defendant applied his brakes, leaving approximately 159 feet of skid marks, in an attempt to avoid *246 hitting plaintiff's vehicle. However, when Barbara Courmier had nearly completed her left turn and the vehicle's front tires were off the road surface and on the gravel parking area, the front left fender of defendant's truck struck plaintiff's vehicle on the driver's side rear panel, approximately at the left rear tire, and left rear bumper.
Still at issue are questions concerning the cause of the accident, the extent of plaintiffs' injuries, and damages, if any.
Barbara Courmier and Ricky Huval gave conflicting testimony concerning the cause of the accident. The plaintiff testified that she checked her side view mirror and rear view mirror, and put on her left turn signal before reaching the intersection. Immediately prior to beginning her left turn she again checked both rear view mirrors and at no time did she see any other vehicle behind her. She stated that she had almost completed her left turn when the accident occurred.
Having heard the testimony of all witnesses, and after reviewing the photographs and other evidence submitted at trial, the Court finds that the accident was caused in part by the negligence of defendant, Ricky L. Huval, and in part by the negligence of plaintiff, Barbara J. Courmier. The Court makes the following factual findings concerning the accident. As defendant came around the second S-curve on Hwy. 82, he saw plaintiff's vehicle at a distance of approximately three to five city blocks. Ricky Huval and his brother Danny L. Huval testified that at that time they saw plaintiff's right turn signal on. State Police Trooper Kenneth Langlinais investigated the accident on September 4, 1982, and testified that defendant informed him that plaintiff's right turn signal was on. Additionally, the Trooper stated that, when questioned, Barbara Courmier could not remember whether her right or left turn signal had been on. The Court finds that plaintiff had activated her right turn signal and, when defendant first saw plaintiff's vehicle, he observed the Pacer proceeding at a very slow rate of speed, in an indecisive manner. The defendant did not know whether the Pacer was going to turn right as its turn light indicated, turn left, or continue straight ahead. Mr. Huval testified that he traveled Hwy. 82 frequently and was very familiar with the intersection of Hwy. 82 and Hwy. 691. He was aware of the "no passing zone" as indicated by the double yellow lines, as well as the flashing yellow light above the intersection and the school zone sign and was aware that it was a busy intersection. The Court accepts Mr. Huval's testimony and finds that defendant had sufficient time and could have stopped his truck behind plaintiff's vehicle at the intersection. However, defendant crossed the double yellow lines in an attempt to pass plaintiff's vehicle despite the indecisive movement of plaintiff's car.
As Barbara Courmier approached the intersection with her right turn signal on, she looked in her side view and rear view mirrors and did not see defendant's truck. Immediately prior to beginning her left turn she again checked both mirrors and failed to see defendant's truck approaching from the rear. The plaintiff began her left turn when defendant was approximately 40 to 50 yards behind her in the left lane. Barbara Courmier had nearly completed her left turn when defendant's truck struck the Pacer at the left rear tire and left rear bumper."

ISSUE NO. 1
The defendants argue that the trial court's assessment of negligence, 90% to the truck driver and 10% to Barbara Courmier, was contrary to the law and evidence. We agree.
A trier's findings as to percentage of fault are factual and, in absence of clear or manifest error or an abuse of discretion, must be upheld on appeal. Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3rd Cir.1984).
The facts in this case, as found by the trial court and which we have adopted, *247 clearly indicate that Barbara Courmier's share of the negligence was greater than 10%. Barbara Courmier turned left, although she had for some time previous thereto activated her right turn signal which indicated her intention to turn right. Additionally, she failed to see the truck in the passing lane just prior to commencement of her left turn, although, as the trial court determined, the truck had pre-empted the left or passing lane at least 159 feet behind plaintiff's vehicle.
Judicial interpretations of LSA-R.S. 32:104 A[2] have made it extremely clear that a left turning motorist has a strong duty of care, which duty includes properly signaling an intention to turn left, and keeping a proper lookout for both oncoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety. Agency Rent-A-Car, Inc. v. Hamm, 401 So.2d 1259 (La.App. 1st Cir.1981). The left turning motorist is required not only to look to the left before turning, but has a duty to see what should be observable. Hollier v. Gilder, 306 So.2d 475 (La.App. 3rd Cir.1975).
In this instance, there was ample evidence to support the trial court's factual finding that Barbara Courmier activated her right turn signal before turning in the exact opposite direction. The record also supports the view that Barbara Courmier did use her rear view mirror and side mirror to search for overtaking vehicles. However, she did not see what she should have seen, i.e., the truck in the passing lane which was easily observable since it had pre-empted the passing lane at least 159 feet before reaching plaintiff's vehicle. Under these circumstances, we conclude it was clearly wrong for the trial court to assess her with only 10% of the fault.
The Louisiana Supreme Court in Watson v. State Farm Fire and Cas. Ins. Co., 469 So2d 967 (La.1985) set forth guidelines to assist the courts (both trial and appellate courts) in determining the degree of negligence assessable to joint tortfeasors. In Watson, supra, the court stated:
"... We recognize that a standard for determining percentages of fault has not been provided by the Legislature, and we are therefore presented with an opportunity to offer guidelines as we apportion fault in this instance.15 In so doing we have looked to the Uniform Comparative Fault Act, 2(b) and Comment (as revised in 1979),16 which incorporates direction for the trier of fact. Section 2(b) provides:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties." (Footnotes omitted).
After reviewing the record and applying the guidelines set forth in Watson, supra, we determine that the assessment of negligence should have been 60% to Ricky Huval and 40% to Barbara Courmier.
*248 Ricky Huval attempted to pass the Courmier vehicle in a double yellow lined no-passing zone. His actions were not inadvertent, and he was fully aware that he was passing in a no-passing zone through a busy intersection that had a flashing yellow light warning motorists of impending danger. Additionally, Huval frequently traveled this road, was extremely familiar with the intersection, and knew that vehicles were apt to be pulling into or out of the parking areas of the store that was adjacent to the highway. On the other hand, Barbara Courmier was also familiar with the highway and the intersection.
It appears to us that the conduct of both parties created a great risk, although Huval's conduct, in our judgment, created the greater risk. Huval indicated that he saw the Courmier vehicle moving in a slow, indecisive manner although the Courmier vehicle had its right blinker on. From these observations, which Huval made while he was at least 159 feet or more behind the Courmier vehicle, it should have been apparent to him that he was coming upon a dangerous situation. At that time, Huval did not let up on the accelerator or attempt to brake his vehicle. Instead, he entered the no-passing zone and traveled through a busy intersection in the wrong lane in an attempt to pass the Courmier vehicle. Barbara Courmier created a lesser degree of risk when she activated her right turn signal. Even though she has a duty to make the proper signal and a duty to keep a proper lookout, her signaling and slowing down should have warned Huval to slow his vehicle. However, her signaling to turn right and then turning left without keeping a proper lookout was clearly a cause in fact of the collision.
Under all circumstances, and after weighing the factors outlined in Watson, supra, Ricky Huval must be assessed the greater amount of fault. However, even though Huval was passing in a no-passing zone, this does not exonerate Barbara Courmier from her fault. See Beraud v. All State Insurance Co., 251 So.2d 402 (La.App. 1st Cir.1971); Waters v. Pharr Brothers, Inc., 228 So.2d 91 (La. App.2d Cir.1969), cert. denied, 254 La.1101, 229 So.2d 113. We, therefore, amend the trial court's finding of comparative negligence and assess Ricky Huval with 60% of the fault and assess Barbara Courmier with 40% of the fault in this accident.

ISSUE NO. 2
Appellants argue that the damage award to Barbara Courmier for loss of future wages was excessive. Appellants do not take issue with the award for medical expenses or the general damage award for pain and suffering.
After hearing the testimony of Barbara Courmier, and the medical testimony of several physicians, the trial court found that Barbara Courmier had suffered cervical and lumbar strain due to the accident. The accident also caused a bulging of the discs at the L4-5, L5-S1 levels, necessitating a chymopapain injection, a papaya enzyme, to correct the condition.
The court also found that, as a result of the accident, Barbara is presently unable to sit, stand, or walk for periods of time beyond approximately 30 minutes. Prior to the chympapain injections, she underwent months of physical therapy to help her neck and lower back pain, and suffered frequent and severe headaches, all as a result of the collision.
In regard to her future working potential, the trial court found that she will be able to perform some type of light, sedentary work that does not require strenuous activities. The court was also of the opinion that such work could be found within Barbara's geographic location. Lastly, the court concluded that even though Barbara was not able to work at the time of the trial, she would be able to go back to work in the "distant future". Based on these factual findings, the trial judge, in considering the testimony of the only economist to testify, rejected a figure ($263,405.94) for lost wages that assumed that Barbara would never return to work, and rejected a figure ($123,393.20) that assumed that she would return to work one year after the *249 trial date. Instead, he found that the median between these estimates, i.e., the sum of $193,399.57, would adequately compensate Barbara for her future lost wages.
Appellants argue that the trial court should have used the lower figure of $123,393.20 since there was ample evidence to support the conclusion that Barbara could return to work within one year of the trial. Appellee, Barbara Courmier, in her answer to defendants' appeal, requests that we increase the award for loss of future income to $384,803.06. We decline both requests.
Before a quantum award can be disturbed the record must clearly reveal that the trier of fact abused its discretion in making its award; only after making a finding that the record supports that the trier of fact abused its much discretion can the award be disturbed and then only to the extent of lowering it or raising it to the highest or lowest point which is reasonably within the discretion afforded the trier of fact. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The record in the instant case clearly supports the trial judge's determination that Barbara Courmier would be able to return to work in the "distant future" at an occupation that would not require strenuous activity or heavy lifting. Barbara testified at trial that since the chymopapain injections she has been feeling much better although she still experiences some lower back pain and occasional headaches. Dr. Jackson, the physician who made the injections, noted "a lot of improvement" and suggested that Barbara start a rehabilitation program that would help train her for a position that would not put a strain on her back. Dr. Jackson also indicated that "it does appear that the way she's going she's going to eventually get relief completely". He further testified in his deposition on cross-examination that "... most people who have had this much improvement in this period of time since her injection usually go ahead and get over their symptoms ... odds are on her side". However, the doctor did not predict when she would be able to go back to work or when her symptoms would be gone.
With the above in mind, we feel that the trial court was correct in concluding that Barbara would be able to return to some type of non-strenuous work in the "distant future". We therefore do not reduce, nor do we increase, the award for loss of future wages.

ISSUE NO. 3
Appellants next contend that the damage award to Beverly Courmier was excessive. Appellants argue that any award for Beverly Courmier's psychological damages was erroneous as Louisiana law does not allow recovery of such damages for injuries to another[3]. They further argue that the trial court's calculation of damages awarded for Beverly's injuries was incorrect since it did not take into account the court's findings of the percentage of negligence of Barbara Courmier. They argue that they should only be responsible for the percentage of negligence attributable to Huval.

PSYCHOLOGICAL DAMAGES
The trial court in its written reasons found that:
"... as a result of the accident, Beverly Courmier had nightmares every night for approximately two weeks after the accident. Since that time, however, these nightmares have not re-occurred and Beverly thinks about the accident only infrequently. She also sustained a mild cervical strain, inducing a muscle spasm which caused headaches sufficient to awaken Beverly from sleep at night. These headaches occurred frequently for approximately two months after the accident, and then began to diminish. However, by December 6, 1982, they had diminished *250 in frequency and by January 3, 1983, Beverly's headaches and other complaints were essentially gone. Therefore, Beverly Courmier had completely recovered within four months after the accident, and no longer suffers from nightmares, headaches, or any other physical complaints. Beverly's only remaining problem is occasional slight anxiety when riding in automobiles and an infrequent recollection of the accident."
Defendants correctly state that, under Louisiana law, a person may not recover damages for mental pain and anguish suffered by her merely as a result of physical injuries sustained by another person. McFarland v. Cathy, 349 So.2d 486 (La.App. 3rd Cir.1977), and cases cited therein. However, in the instant case, the trial judge awarded damages for mental pain and anguish suffered by Beverly as a result of the injuries sustained by Beverly during the accident, not as a result of injuries sustained by Barbara Courmier. The record supports the finding that Beverly suffered from recurring nightmares on a nightly basis for a number of weeks, that she still had intruding thoughts about the accident during waking hours, and that she suffered from some amount of anxiety when riding in automobiles. In this case, Beverly was a passenger in one of the vehicles involved in the collision, she was not some passive bystander who witnessed or later learned about the event. The trial court was not clearly wrong in making these factual determinations.
Since Louisiana law does allow an award for mental pain and anguish suffered by a person injured in the accident, and since the record clearly reflects that Beverly was such a person and suffered such injuries, the award of the trial court is affirmed. McFarland, supra; and cases cited therein.

CALCULATION OF DAMAGES FOR BEVERLY
Defendants argue that the trial court's award to Beverly should be reduced by 10% or more because she had settled with another tortfeasor who was a party to the suit and who was also responsible in part for Beverly's injuries.
Lucille Runnion, individually and as provisional tutrix of the minor, Beverly Courmier, originally sued the three defendants (Huval, Schlumberger, Travelers) and State Farm Mutual Automobile Insurance Company. State Farm, as Barbara Courmier's liability insurer, settled with Lucille Runnion on the morning of the trial and was dismissed. Appellants contend that any award for Beverly's injuries should be reduced by whatever percentage of negligence is assessed to Barbara's actions. We agree.
A defendant may reduce his obligation to a plaintiff by showing that another tortfeasor, with whom plaintiff has settled and who is no longer a party to the action, is also responsible in some way for plaintiff's injuries. Wall v. American Employers Insurance Co., 386 So.2d 79 (La.1980); Garrett v. Safeco Insurance Co., 433 So.2d 209 (La.App.2d Cir.1983).
For the above and foregoing reasons, the judgment of the trial court is amended to read as follows:
It is Ordered, Adjudged and Decreed that there be judgment herein in favor of Plaintiff, Barbara J. Courmier, and against Defendants, THE TRAVELERS INSURANCE COMPANY, SCHLUMBERGER OFFSHORE SERVICES and RICKY HUVAL, in the full and true sum of ONE HUNDRED SIXTY-SEVEN THOUSAND FIVE HUNDRED NINETY-THREE AND 01/100 ($167,593.01) DOLLARS, together with legal interest from date of Judicial Demand until paid.
In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half (½) to appellants and one-half (½) to appellee.
AFFIRMED AS AMENDED.
NOTES
[1] Judge Warren Hood of the 14th Judicial District Court participated in this decision as Judge Pro Tempore of the Third Circuit Court of Appeal.
[2] La.R.S. 32:104A provides:

"A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."
[3] Beverly testified that she had nightmares after the accident, dreaming that Barbara died in the accident.